## WELCH v. COOK.

1. The act of the legislative assembly of the District of Columbia of June 26, 1873, exempting from general taxes for ten years thereafter such real and personal property as might be actually employed within said District for manufacturing purposes, provided its value should not be less than $5,000, did not create an irrepealable contract with the owners of such property, but merely conferred a bounty liable at any time to be withdrawn.

2. Congress, by the act of June 20, 1874 (18 Stat. 117), which superseded the then existing government of the District, declared that for the fiscal year ending June 30, 1875, there should "be levied on all real estate in said District, except that belonging to the United States and to the District of Columbia, and that used for educational and charitable purposes," certain specified taxes. *Held*, that under said act real property used for manufacturing purposes, although within the exemption granted by the act of the legislative assembly, became subject to taxation.

APPEAL from the Supreme Court of the District of Columbia.

On the 26th of June, 1873, the legislative assembly of the District of Columbia enacted that " all property, real and personal, which may hereafter be actually employed within the limits of the District of Columbia for manufacturing purposes, shall be exempt from all general taxes for a period of ten years from the date of this act going into effect: *Provided*, that the value of the property so employed for manufacturing purposes shall not be less than $5,000." Laws Dist. of Col. 126.

The fourth section of the act of Congress approved June 20, 1874 (18 Stat. 117), enacts as follows : —

"That for the support of the government of the District of Columbia, and maintaining the credit thereof, for the fiscal year ending June 30, 1875, there shall be levied on all real estate in said District, except that belonging to the United States and to the District of Columbia, and that used for educational and charitable purposes, the following taxes, namely."

Under this act the commissioners of the District assessed, for the taxes for the year ending June, 1875, certain real property of Welch within the District, which was employed for manufacturing purposes, and was of the value of $5,000.

His bill of complaint alleges that on the faith of the above

act of the legislative assembly he expended large sums of money in improving his said property; that, in pursuance of the said act, the commissioners exempted it from the taxes of the year ending June, 1874, but are now about to sell it for the taxes of 1875, and that these proceedings cast a cloud upon his title. He asks for a perpetual injunction to restrain the collection of these taxes, and for such other relief as may be necessary.

To this bill the defendants, who are the tax-collector and the commissioners of the District, demurred. The demurrer was sustained at the special term of the Supreme Court of the District, which action having been affirmed at the general term, Welch appealed to this court.

*Mr. Philip Phillips* and *Mr. William A. Maury* for the appellant.

*Mr. Albert G. Riddle, contra.*

MR. JUSTICE HUNT, after stating the case, delivered the opinion of the court.

It is not open to reasonable doubt that Congress had power to invest, and did invest, the District government with legislative authority, or that the act of the legislative assembly of June 26, 1873, was within that authority. We shall therefore consider the question as if that act exempting manufacturing property from taxation had been passed directly by Congress. It does not create a contract in the sense that it cannot be repealed. It has been frequently held that the incorporation of a company by special charter, with the exemption of its lands or other property from taxation, creates, upon the acceptance of the charter, a contract which will insure that exemption during the period specified. But the present case does not come within that rule. This is a bounty law, which is good as long as it remains unrepealed; but there is no pledge that it shall not be repealed at any time. *Salt Company* v. *East Saginaw*, 13 Wall. 373.

The counsel for the appellant correctly states the question as this: Has the act of the legislative assembly of June, 1873, been repealed or suspended by the act of Congress of June 20, 1874?

It is also correctly stated, as a legal proposition, that a second law on the same subject does not, without a repealing clause or negative words, repeal a former one, unless its provisions are so clearly repugnant as to imply a negative. *Beals* v. *Hale*, 4 How. 37 ; *Ex parte Yerger*, 8 Wall. 85.

We are, however, of the opinion that we cannot do otherwise than hold that this case was correctly decided ; that is, that by the more recent act it was intended to subject to taxation all the real property in the District, except such as was specifically exempted.

We are to presume that Congress knew that, as the law stood on the 20th of June, 1874, the property in the District was liable to taxation, with certain exceptions, and that it knew of what such exceptions consisted. We are also to presume that it appreciated the effect of its action when it took upon itself anew, and in derogation of the local authorities, the duty of fixing the subjects of taxation ; and that it knew that the result of declaring all the property, with certain exceptions, to be liable to the payment of taxes for the year ending June, 1875, was to make that act stand in the place of all others upon the subject.

The exemption of manufacturing property, as we have shown, was a bounty merely revocable at any time by the legislature. The year following this expression of its bounty, in passing an act to obtain means " for the support of the government and maintaining the credit thereof," it enacts that " there shall be levied on all real estate in said District . . . the following taxes, namely." This general language was not used unadvisedly, without a present remembrance that there were certain kinds of property not intended to be included, but which would be so included unless particularly noticed. Therefore it was added, " except that belonging to the United States and to the District of Columbia, and that used for educational and charitable purposes." The bounty of the government previously extended to property used for the purposes of education, and in dispensing its charities to the poor, the insane, the destitute orphan, the aged and infirm, was still continued. Its bounty of exemption, before given to those engaged in manufactures and employing at least $5,000 therein, did not present the same

sentimental question to the legislator. He may well have thought it a wise charity, a merciful duty, to relieve the one, and to allow the others to bear the ordinary burdens of property engaged in traffic or manufacture, and used for the purpose of gain.

The exemptions set forth in the act of Congress of March 3, 1875 (18 Stat. 503), are more in detail, but of the same character with those of 1874, and indicate a persistent intention in Congress to include manufacturing property as a proper subject of taxation.

But it is to be observed that the act of June 20, 1874, is the act of a different body from that which adopted the act of 1873, and is a part of an act of Congress organizing a new and entirely different system of government. Id. 116, 117.

The first section of the act of 1874 provides that all the general offices of the District then existing, except that of delegate in Congress, shall be abolished, the office of delegate in Congress continuing until the end of the existing term. The government, then carried on by an executive, a secretary, a legislature, and a board of public works, is superseded by a commission of three persons (appointed by the President), whose powers and duties are strictly prescribed. The rules respecting the collection of taxes then assessed, including a prohibition (by sale or hypothecation) of an anticipation thereof, are laid down, and the compensation of all officers, except teachers in public schools, is reduced twenty per cent per annum. Certain duties theretofore under the control of the board of public works are vested in an officer of the army, to be detailed by the President, under the supervision of the commissioners. In its fourth section it then proceeds to direct the levy of a tax of three dollars for each one hundred dollars of the assessed value of all the real estate in the city of Washington, and two dollars and fifty cents upon that situate in the city of Georgetown, except that belonging to the United States or the District of Columbia, and that used for educational and charitable purposes.

Under these circumstances, and prefaced as was the act by the recital that this levy was made to support the government and maintain its credit, it is apparent that the act of Congress

was intended to create a separate system, and to be independent of the action of all preceding bodies. Other and different exemptions had before existed; no settled system had been adopted. The act of the legislative assembly of 1871, fixing the taxes for that year, gave more than forty exemptions in great detail, covering an entire page in the statute-book (p. 26); that of the same body, fixing the taxes for 1872, exempted only parsonages, churches, the ground on which they stood, and burial-grounds (p. 109); here it is declared that all real estate shall be taxed, except that herein specifically exempted. We think that the system in regard to taxation, including what should be taxed, the rates, and the exemptions from taxation, was intended to be an independent one, to abolish existing impositions or exemptions, and to form a complete system of itself.

Nor are we able to see that this action involves a breach of faith towards the owner of the manufacturing property. Conceding, as the plaintiff must and does, that the exemption of his property was of the bounty of the legislature, he knew when he accepted it that it was liable to be revoked whenever either the local legislature or Congress should be of the opinion that the public interests demanded such action. He could not but realize that an assessment of three per cent upon the value of property in Washington, or two and a half per cent upon that in Georgetown, created a heavy burden. Others felt it as he did, and it is reasonable to suppose that Congress considered it a duty to lighten the burden of taxation, by increasing the subjects of it, as far as justice required.

Upon the whole case, we are of the opinion that the decree of the court below was correct.

*Decree affirmed.*

MR. JUSTICE FIELD dissented.