THOMPSON, COMMISSIONER OF REVENUES *v.* CONTINENTAL SOUTHERN LINES, INC.

5-72                                   257 S. W. 2d 375

Opinion delivered May 4, 1953.

*O. T. Ward* and *Conley F. Byrd,* for appellant.

*Bailey & Warren* and *Bruce T. Bullion,* for appellee.

ROBINSON, Justice. The Revenue Commissioner of the State of Arkansas filed this suit seeking to collect from appellees alleged unpaid gasoline and diesel fuel taxes. The defendants answered and cross-complained. Plaintiff demurred thereto. The trial court overruled the demurrer and upon the plaintiff's refusal to plead further, rendered a judgment for the defendants as against the complaint, and for the defendant Continental Southern Lines, Inc., on the cross-complaint in the sum of $35,218.72. The Revenue Commissioner has appealed.

The complaint alleges that the appellee Continental Southern Lines, Inc., is engaged in the business of transportation for hire of passengers into and through the State of Arkansas by motor bus, and as such has qualified as a bonded motor fuel user in Arkansas; that appellee Standard Accident Insurance Company had executed a surety bond guaranteeing that the bus company would comply with the statutes providing for motor fuel taxes; that the defendant bus company owes the State of Arkansas as tax on diesel fuel for the months of April, May, June, July, and August, 1952, the sum of $1,876 and owes the State as tax on gasoline from October, 1945, to August, 1952, the sum of $37,283.55. The answer denies any indebtedness to the State and alleges that defendant had paid the tax on the gasoline as required by law. By way of cross-complaint the defendant bus company alleged that it had not taken credit on the

diesel fuel it had used which was exempt to the extent of 20 gallons for each entry the bus company made into the State from January, 1945, to April, 1952, inclusive; and that it had therefore overpaid the State $35,218.72 which it was entitled to have refunded. The State filed a special demurrer to the answer on the ground that the Act granting the bus company a 20-gallon exemption from taxes on fuel brought into the State is unconstitutional.

The case turns on the constitutionality of Acts 378 and 383 of 1941 as amended by Acts 188 and 192 of 1943. In the year 1933 the legislature by Act 67 made it unlawful for any motor vehicle for hire to enter the State of Arkansas without paying 6½ cents per gallon tax on all the fuel it carried for the operation of such vehicle in excess of 20 gallons. In 1938 the Dixie Greyhound Line, operating buses for hire from Memphis to St. Louis, filed a suit to enjoin the State of Arkansas from collecting a tax on the portion of gasoline carried by buses to be used on the highways of Missouri. This case went to the U. S. Supreme Court, where the Act was held unconstitutional. *McCarroll, Commissioner,* v. *Dixie Greyhound Lines, Inc.,* 309 U. S. 176, 60 S. Ct. 504, 84 L. Ed. 683. The U. S. Supreme Court said that although the state had the right to tax vehicles engaged in interstate commerce for the use made of state roads, it had no right to collect a tax on the fuel that was being carried through the state to be used on the highways of other states. Subsequently the legislature of 1941 passed Acts 378 and 383 levying a tax on the motor fuel brought in by buses to be used on the highways of the State in excess of 20 gallons. This eliminated the feature of the 1933 Act which the U. S. Supreme Court had said was unconstitutional.

Subsequent to the passage of the 1941 Act, a suit was filed in the Pulaski Chancery Court against the Commissioner of Revenues alleging that notwithstanding the 1941 Act which provided for an exemption from the payment of the tax on 20 gallons of gasoline brought into the state, the Commissioner was collecting the tax

on such gasoline. *McLeod, Commissioner,* v. *Santa Fe Trail Transportation Co.,* 205 Ark. 225, 168 S. W. 2d 413. The Commissioner denied that the bus company was entitled to a 20-gallon exemption and alleged that § 6 of the Act allowing an exemption of 20 gallons to commercial operators for hire was void as being discriminatory against other operators. It was held that the discrimination between vehicles for hire and others was founded upon a reasonable distinction and was not an arbitrary classification and not unconstitutional. It was also held that if the operator of a motor bus had the gasoline in the fuel tank measured upon entering the state and again upon leaving the state, a 20-gallon exemption could be allowed; but if the operator of the bus did not want to suffer the delay that would be occasioned by measuring the gas upon entering and leaving the state, he could pay on the basis of the actual miles travelled in the state; but under the latter plan he would not be entitled to the 20-gallon exemption. In that case it was held there were reasonable grounds for distinction between the class of vehicles for hire and others; but whether such distinction existed as between intra-state vehicles for hire and inter-state vehicles for hire was not considered.

Following that decision, the 1943 legislature passed Acts 188 and 192, which make it possible for every vehicle for hire to pay monthly and get the 20-gallon exemption. Also the 1943 Acts allow the operator to compute the miles travelled on the state roads on the 20 gallons of exempt gasoline at eight miles per gallon.

Article 2, § 18 of the Constitution of Arkansas provides: "The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens."

Section 6 of Act 188 of 1943 provides: "Any person, firm or corporation who shall operate any motor carrier, bus, truck, transport or other motor vehicle for hire and who shall bring into the State of Arkansas motor fuel in the fuel tank or tanks of such vehicle or vehicles shall

be liable for a tax of 6½ cents per gallon on all of such motor fuel used or consumed in the State of Arkansas, except as hereinafter provided. Any such person, firm or corporation shall be entitled to an exemption from the payment of such tax on the first twenty (20) gallons of such motor fuel brought into the State of Arkansas on each and every trip in any such fuel tank or tanks of such vehicle or vehicles and used in the State of Arkansas, provided that there has been filed, or arrangement is made for the filing of, a corporate surety bond to secure the payment of such tax on all such motor fuel used or consumed in the State of Arkansas in excess of the twenty (20) gallons herein exempted, and provided report shall be made on or before the 25th day of each and every month of such motor fuel brought into the State of Arkansas and used during the preceding calendar month. . . ."

Act 192 of 1943 also allows the 20-gallon exemption. The Acts are not unconstitutional. Under the provisions of the Acts, no citizen or class of citizens is granted any privilege or immunity which upon the same terms is not granted to all citizens. It is true that one entering the state may use the highways without paying any tax on 20 gallons of gas he has in the fuel tanks, whereas one who does not enter the state but is already here must pay a tax on each and every gallon he uses in driving on the highways; but if this can be said to be a discrimination, it is not an arbitrary one.

In the Santa Fe case, it is said: "In the case of *Hardin, Commissioner,* v. *Vestal,* 204 Ark. 492, 162 S. W. 2d 923, this court quoted from the Kentucky Court of Appeals in the case of *Williams* v. *City of Bowling Green,* 254 Ky. 11, 70 S. W. 2d 967: 'The fact that a statute discriminates in favor of certain classes does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, or if any state of facts reasonably can be conceived to sustain it.' The above quoted statement is in substance the holding of the U. S. Supreme Court in *State Board of Tax Commissioners of Indiana* v. *Jackson,* 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248,

73 A. L. R. 1464, 75 A. L. R. 1536, and it was there further held that the legislature may not only classify, but for taxation purposes, it may sub-divide classes into particular classes.''

To permit operators of trucks and buses for hire to enter the state and be exempt from paying taxes on the first 20 gallons of gasoline they use which they brought into the state is not arbitrarily granting to such persons a privilege or immunity; in fact it is a matter of common knowledge that thousands of automobiles enter the state daily with gasoline in their tanks sufficient to travel over many miles of highways in the State of Arkansas. No tax whatever is paid to the State of Arkansas on this gasoline, whereas a person within the state pays a tax on each and every gallon used. Can it be said that under our constitution we can not grant to those entering the state any immunity whatever from the payment of taxes on gasoline contained in the fuel tanks of their automobiles, although in all probability they purchased the gas in another state where they paid a tax? To adopt a procedure of stopping every automobile at the border and collecting a tax on all the gasoline in the fuel tank would result in chaos. It is not conceivable that the constitutions of the various states would require that every automobile stop at every state line and pay a tax on the gasoline in the fuel tank before being permitted to enter that state. If the state can not grant the 20-gallon exemption to trucks for hire, perhaps it could not grant an exemption to any motor vehicle. It is entirely possible that the 20-gallon exemption has resulted in abuses, but a condition of that kind is one to be remedied by the legislature.

In *Bollinger* v. *Watson,* 187 Ark. 1044, 63 S. W. 2d 642, the Court had under consideration an Act of the Legislature equalizing the gasoline tax in border towns with the tax of adjoining states. Mr. Justice BUTLER, speaking for the Court, said: ''We are of the opinion that there is no ground for the contention that the act violates the due process clause of the Federal and State Constitutions, or that it comes within the inhibition of

the 14th Amendment to the Federal Constitution or § 18, Art. 2, of the State Constitution. . . . It is not to be presumed that the State has any favors to bestow, or that it designs to inflict any arbitrary deprivation of any right. Discriminations between certain persons or classes is obnoxious to the genius of our government, and it is always to be presumed that no discrimination or abridgment of any fundamental right is contemplated or designed by a Legislature, and a law should not be held unconstitutional because of discrimination or because of some arbitrary deprivation of a right unless there is no rational doubt that it improperly discriminates or arbitrarily destroys some right. . . . There are many cases illustrating the wide latitude to be given Legislatures in enacting legislation and upholding their acts where there is some discrimination on the ground that it frequently is impossible to impose the same burden upon every species of property without regard to its nature, condition or class. (citing cases).''

In *Willis* v. *City of Fort Smith,* 121 Ark. 606, 182 S. W. 275, Mr. Justice KIRBY, speaking for the Court, said, ''When a classification of subjects is made by legislation, such classification must rest on some substantial difference between the classes created and others to which it does not apply, but where the statute or ordinance appears to be founded upon a reasonable basis and operates uniformly upon the class to which it applies, it can not be said to be arbitrary and capricious.''

Likewise in the case at bar, where the Acts under consideration require buses for hire entering the State to pay taxes on all the gasoline used on the roads of the State with the exception of 20 gallons, it can not be said that the 20-gallon exemption is not founded upon any reasonable basis or is capricious.

In connection with the cross-complaint on which the defendant was given a judgment against the Revenue Commissioner in the sum of $35,218.72, appellant argues several reasons why appellee can not recover because of not having taken advantage of the exemption of 20

gallons for each entry on the diesel fuel from 1945 to 1952, but it is necessary to mention only one point in disposing of that issue. Appellee seeks to recover voluntary payments made of taxes. This can not be done. Cooley in *The Law of Taxation,* Ch. 20 § 1282, gives this rule: "It is well settled that if the payment of a tax is a voluntary payment, it cannot be recovered back, except where a recovery is authorized by the provisions of a governing statute regardless of whether the payment is voluntary or compulsory" (Vol. 3 at p. 2561); and further: "Where voluntary payments are not recoverable, it is immaterial that the tax or assessment has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the State should furnish him with legal remedies to recover it back. Ignorance or mistake of law by one who voluntarily pays a tax illegally assessed furnishes no ground of recovery." (Vol. 3 at page 2564).

In *Brunson* v. *Board of Directors of Crawford County Levee Dist.,* 104 Ark. 24, 153 S. W. 828, 44 L. R. A., N. S. 293, Mr. Justice HART, speaking for the Court, said: "In some of the states the right to recover illegal taxes paid under protest is given by statute. In this state, however, there is no statute regulating the matter, and if any recovery is had it must be under the rules of the common law. The common-law rule governing cases of this kind is laid down in the following cases: *Lamborn* v. *County Commissioners,* 97 U. S. 181, 24 L. Ed. 926; *Union Pacific R. R. Co.* v. *Dodge County,* 97 U. S. 541, 25 L. Ed. 196. These cases lay down the following rule: 'Where a party pays an illegal demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release (not to avoid) his person or property from detention, or to

prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back. And the fact that the party, at the time of making the payment, files a written protest, does not make the payment involuntary.' "

We have concluded that the appellant can not recover from the appellee because the 20-gallon exemption is lawful; and the appellee can not recover from the appellant because the payments made were voluntary. The cause is reversed with direction to set aside the judgment and for further proceedings consistent with this opinion.