SEARCY COUNTY *v.* Howard STEPHENSON

5-4466                                   424 S. W. 2d 369

Opinion delivered February 12, 1968
[Rehearing denied March 18, 1968.]

*Joe Purcell,* Attorney General; *Don Langston* and *Ralph G. Brodie,* Asst. Atty. Generals and *Bill Doshier,* Prosecuting Attorney, for appellant.

*Donald Adams,* for appellee.

CARLETON HARRIS, Chief Justice. Searcy County, Arkansas, appellant herein, has appealed from a judgment of the Circuit Court of Searcy County holding Act 68 of 1965 (Ark. Stat. Ann. § 3-841 [Supp. 1965]) unconstitutional, and granting judgment to Howard Stephenson against said county in the sum of $1,497.00. The facts giving rise to the litigation are as follows:

Stephenson, appellee herein, qualified as an independent candidate for the office of Sheriff and Collector

of Searcy County, Arkansas, for the general election to be held in November, 1966. In filing as a candidate, Stephenson paid a fee of $1,500.00 in accordance with the provisions of Act 68 of 1965, which, *inter alia,* provides as follows:

"Hereafter, any person who shall file as an independent candidate, as authorized by Act No. 352 of 1955 [Ark. Stats. (1947) Sec. 3-836 through 3-840], for election as United States Senator or Congressman, or for any state, district, or county office in this state shall pay a filing fee in the same amount charged by the appropriate officials of the political party in this state charging the greatest filing fee for nomination for such office at the primary election of such political party preceding the general election at which such person is a candidate."

The highest filing fee at the primary election in Searcy County for the office of Sheriff and Collector was set by the Republican Central Committee, and was in the amount of $1,500.00. Appellee was unsuccessful in his race for this office, and in December, 1966, filed a claim against the County of Searcy for reimbursement of the $1,500.00 filing fee. The then County Judge, sitting as the County Court, allowed the claim, but the claim and order were lost without ever being placed of record. The subsequent county judge held that the claim was not valid, and that the order allowing same should be set aside. In the meantime, the first order had been appealed to the Searcy County Circuit Court. There, as here, appellee contended that Act 68 was void and unconstitutional because it was discriminatory against independent candidates in the general election, the $1,500.00 fee being required of him, while party nominees for county office were allowed to get their names on the general election ballot by the payment of the sum of $3.00. The Circuit Court held the act unconstitutional for that reason, and for the further reason that it constituted an attempt by the General Assembly to delegate

to political parties the authority to fix ballot fees required of candidates for public office in the general election. Thereupon, the court entered its judgment, holding that Stephenson was entitled to recover $1,-497.00.

The main issue here is whether Searcy County owes Stephenson $1,497.00, and we have held on numerous occasions that we do not pass upon constitutional questions if the litigation can be determined without doing so. In *Honea* v. *Federal Land Bank of St. Louis,* 187 Ark. 619, 61 S. W. 2d 436, this court said:

"* * * It is both proper and more respectful to a coordinate department to discuss constitutional questions only when that is the very *lis mota.* Thus presented and determined, the decision carries a weight with it to which no extra judicial disquisition is entitled. In any case therefore where a constitutional question is raised, though it may be legitimately presented by the record, yet, if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable. Such has been the unvarying practice of this court. See also *Martin* v. *State,* 79 Ark. 236, 96 S. W. 372; *Sturdivant* v. *Tollett,* 84 Ark. 412, 105 S. W. 1073; *Road Imp. Dist. No.* 1 v. *Glover,* 86 Ark. 231, 110 S. W. 1031."

Here, the question of whether the county is liable can be determined without passing upon the validity of Act 68 of 1965, and in accordance with the above cited cases, we by-pass the constitutional question.

It is asserted by appellant, and we find correctly so, that Mr. Stephenson did not take the proper steps to insure a return of the filing fee, whatever the status

of the act in question. Of course, if the statute be constitutional, he could not prevail. Assuming, therefore, for purposes of this discussion only, but without deciding, that the act is unconstitutional, it will be noted that no complaint was raised by appellee until after the election had been held, and it had been determined that he was the losing candidate. Then, and then only, did he raise any question about the legality of the amount of the fee. Before paying the $1,500.00, as far as this record reflects, he made no effort to ascertain whether the statute was valid or invalid.[1] It is not disputed that the payment of $1,500.00 was entirely voluntary.

The most that can be said on appellee's behalf is that the payment was made under a mistake of law. In *Thompson, Commissioner of Revenues* v. *Continental Southern Lines, Inc.*, 222 Ark. 108, 257 S. W. 2d 375, this court said:

"Appellee seeks to recover voluntary payments made of taxes. This cannot be done. Cooley in *The Law of Taxation*, Ch. 20 § 1282, gives this rule: 'It is well settled that if the payment of a tax is a voluntary payment, it cannot be recovered back, except where a recovery is authorized by the provisions of a governing statute regardless of whether the payment is voluntary or compulsory' (Vol. 3 at p. 2561); and further: 'Where voluntary payments are not recoverable, it is immaterial that the tax or assessment has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. *Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the State should furnish him with legal remedies to recover it back.*[2] * *

---

[1] In fact, he did not even pay the amount "under protest."

[2] Emphasis supplied.

"* * * The common law rule governing cases of this kind is laid down in the following cases: *Lambron v. County Commissioners,* 97 U. S. 181, 24 L. Ed. 926; *Union Pacific R. R. Co. v. Dodge County* 97 U. S. 541, 25 L. Ed. 196. These cases lay down the following rule: *'Where a party pays an illegal demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor,*[a] or unless to release (not to avoid) his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back.''

While this case related to a voluntary payment of taxes, the overall principles are set out in the italicized language. Applying the principles to the instant case, Mr. Stephenson was due to know the law; yet he voluntarily made a payment which, according to his present contention, the law would not have compelled him to make. Still, he made it, and he cannot now assert ignorance of the law as a reason why his money should be returned. Further applying the language in *Thompson, Commissioner of Revenues v. Continental Southern Lines, Inc., supra,* if Stephenson paid an illegal demand, he certainly, at that time, had full knowledge of all the facts, *i. e.,* he knew that the $1,500.00 charge to him was based on the fee set in the Republican primary, and he certainly should have been as aware of any alleged illegality before the election—as after it!

Actually, it would seem that there is less reason to refund a fee paid to seek office, than to refund taxes paid under an invalid act, for under the last circumstance, an owner is endeavoring to protect his property from detention or seizure.

Stephenson had two remedies which he could have followed before making the payment. He could have sought a writ of mandamus, directing the proper county

[a]Emphasis supplied.

official to place his name upon the general election ballot after the payment of $3.00, or he could have acted under provisions of Ark. Stat. Ann. § 34-2502 (Repl. 1962), which states:

"Any person interested under a deed, will, written contract or other writings constituting a contract, *or whose rights, status or other legal relations are affected by a statute,*[4] municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Certainly, the validity of Act 68 of 1965 could have been determined prior to paying the fee.

A rather pertinent argument is also made by appellant to the effect that the filing fee, having been comingled with other county monies in the general fund, cannot now be refunded without an appropriation, and it is argued that there is no constitutional authority to make such an appropriation. It is not necessary that we discuss this point, since the litigation is disposed of under the previous contention.

Reversed.

BYRD, J., concurs.

CONLEY BYRD, Justice, concurring. I concur in the result reached, but I think we should determine the constitutional issue since it involves our election laws. In *Horn v. White*, 225 Ark. 540, 284 S. W. 2d 122 (1955), after holding that Horn could not contest the election because he had not filed his petition to be an independent candidate within the 45 days allowed by Act 241 of 1953, we said:

---

[4]Emphasis supplied.

"II. *Election Law Question.* Ordinarily an opinion of this Court need go no further than has been above stated; but we are now constrained to go further because the question posed by the parties (that is, whether Act 211 of 1953 or Act 241 of 1953 is the governing law) relates to an interpretation of certain provisions in our election laws; and it is the policy of this Court to settle such questions for the future guidance of the public."

I agree with the trial court that Act 68 is discriminatory and unconstitutional.