Clarence J. WORTH and Demaris E. Worth
*et al. v.* CITY of ROGERS *et al.*

99-89 14 S.W.3d 471

Supreme Court of Arkansas
Opinion delivered April 13, 2000

*Tommy J. Keith,* Judge;

The Evans Law Firm, P.A., by: *Marshall Dale Evans* and *Stephanie Brodacz*; and *Hirsch Law Firm, P.A.,* by: *E. Kent Hirsch,* for appellants.

*Clark & Spence,* by: *George R. Spence; Matthews, Campbell, Rhoads, McClure & Thompson,* by: *David R. Matthews; Jim Clark,* Rogers Deputy City Att'y; and *Robin Green,* Benton County Att'y, for appellees.

D ONALD L. CORBIN, Justice. This is an *illegal-exaction suit.* Clarence J. and Demaris E. Worth, and other Appellants, are residents and owners of real property in Benton County, Arkansas. They filed suit on behalf of themselves and other Benton County property owners against the City of Rogers; Dr. Randall A. Spear, Superintendent of the Siloam Springs School District; Mary L. Slinkard, Benton County Clerk; David Green, Benton County Collector; and members of the Bentonville, Rogers, and Siloam Springs school boards, alleging that ad valorem property taxes were collected in violation of Amendment 59 of the Arkansas Constitution. This appeal involves issues of statutory and constitutional interpretation; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1) and (b)(6). We reverse the trial court's grant of summary judgment and remand this matter for trial.

## History and Background

There are various constitutional and statutory provisions implicated in this appeal. In order to fully understand the arguments presented by the parties, it is helpful to first review a brief history of these provisions. In 1979, this court ordered that a statewide reassessment plan was to take effect by January 1, 1981, in order to ensure that property was taxed according to its value and that this value was uniform throughout the state. *See Arkansas Pub. Serv. Comm'n v. Pulaski County Bd. of Equalization,* 266 Ark. 64, 582 S.W.2d 942 (1979). In order to prevent a sudden and dramatic increase in tax bills as a result of this decision, Amendment 59 was added to the Arkansas Constitution. Amendment 59 provides that whenever a countywide reassessment results in an increase of the aggregate value of taxable real and personal property of ten percent or more over the previous year, each taxing unit must adjust or roll back taxes. The amendment goes on to state that the General Assembly shall establish the procedures to be followed by a county in making a countywide reappraisal. The General Assembly did establish such procedures in Ark. Code Ann. § 26-26-401 (Repl. 1997). That section provides:

The provisions of this subchapter relative to the adjustment or rollback of millage levied for ad valorem tax purposes shall be applicable only where there is a countywide or statewide reappraisal of property:

(1) Pursuant to court order; or

(2) Pursuant to directive of law enacted by the General Assembly; or

(3) When the reappraisal is initiated by the assessor, the county equalization board, by directive of the quorum court or upon request of one (1) or more taxing units of a county, and is determined and certified by the Assessment Coordination Division of the Arkansas Public Service Commission as constituting a comprehensive countywide reappraisal; or

(4) When ordered by or implemented by a county pursuant to a directive of the division or its successor agency.

Act 758 of 1995 was enacted and codified at Ark. Code Ann. § 26-26-305 (Repl. 1997) and required assessors to reappraise all property at least once every five years, while purporting to exempt such mandated countywide reappraisals from Amendment 59. Act 836 of 1997, codified at Ark. Code Ann. § 26-26-306 (Repl. 1997), repealed Act 758 and found, in its emergency clause, that Act 758 had placed an unfair burden on the taxpayers of Arkansas by directing countywide reappraisals of property in a manner which circumvented the rollback provisions of Amendment 59. Act 836 instituted provisions to remedy the unfair tax burden placed on tax payers as a result of Act 758. The present appeal stems from the interpretation and application of these laws.

The record reflects that in early 1990, Shirley Sandlin, the Benton County Assessor, began a reappraisal of the real estate in Benton County. This reappraisal included all of the taxing units within the county. Ms. Sandlin testified that she began the reappraisal in order to comply with the statutory duty that county assessors keep appraisal and assessment data and records current by maintaining the proper ratio of real property values to the market value. *See* Ark. Code Ann. § 26-26-302 (Repl. 1997). Ms. Sandlin wanted to ensure that the assessed value of the real and personal property in the county remained within eighteen to twenty percent of the true market value. At the time of this reappraisal, however,

there was no procedure in place to separate newly discovered property for purposes of determining proper millage rates. The reappraisal was a cyclical review that took five years to complete. Upon completion, however, the entire county had been reappraised. This assessment was never certified by the Assessment Coordination Department (ACD), thus the provisions of Amendment 59 were never triggered and no rollbacks took place. Ms. Sandlin testified, however, that the reappraisal was not certified because she never sought such certification from the ACD. Furthermore, Appellants submitted affidavits stating that there was no formal certification process established through the ACD; rather, it was the duty of county officials to request such certification. Ms. Sandlin also testified that prior to undertaking the reappraisal in 1990 she discussed with Larry Crane, then director of the ACD, that a cyclical review would not trigger the provisions of Amendment 59.

Act 758 was passed by the General Assembly after completion of this reappraisal and triggered another reappraisal beginning in 1996. This reappraisal ended on October 23, 1997, and was ultimately certified by the ACD as a countywide reassessment, subject to the provisions of Amendment 59. The record indicates that pursuant to section 26-26-306, Benton County began and completed the rollback resulting from the 1996-97 reappraisal. A rollback of property values was subsequently implemented for the reappraisal that occurred in 1997. The increases resulting from the 1996 portion of the reappraisal, however, were never included in the calculations used to determine the proper rollback, even though Ms. Sandlin acknowledged that she did not complete any one taxing unit in 1996.

Appellants filed suit in the circuit court of Benton County on April 25, 1997, challenging the property-tax collections made by the school districts and the City of Rogers as premature and occurring prior to the completion of the cyclical reappraisal. Appellants further alleged a failure to rollback the millage rates for the tax years 1995 and 1996. Appellants also filed suit in Benton County Court on May 2, 1997, challenging the county's failure to calculate the rollback following the countywide reappraisals. The two actions were subsequently consolidated into the present matter.

Appellees filed a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(6), alleging that Appellants failed to state a claim upon which

relief could be granted. Specifically, Appellees argued that Appellants failed to allege in any of their pleadings that the 1990-95 reappraisal was conducted pursuant to one of the four factors set out in section 26-26-401 and thus, were not entitled to any relief. Appellees further argued that Appellants were not entitled to any refund of taxes paid because they failed to allege that any taxes were paid under protest.

The trial court treated the motion to dismiss as one for summary judgment as to the assessment for the period from 1990-96. In so doing, the trial court found summary judgment to be appropriate because there were no genuine issues of material fact to be decided. Specifically, the trial court found that the cyclical reappraisal begun in 1990 and ending in 1996 did not constitute a countywide reappraisal, thus a rollback of millage rates was not required, nor was a refund of taxes required. The trial court also found that section 26-26-306 did not apply to the cyclical reappraisal begun in 1996 because the statute provided that taxes due and owing at the time of it's effective date, March 26, 1997, would continue to be due and owing. Furthermore, the trial court found that while section 26-26-306 did apply to the property assessed in 1997, the assessor's office had taken steps to effectuate a rollback, thus rendering this issue moot. However, the trial court also stated that while such issue was moot, Appellants were not barred from challenging the validity of the 1997 rollback in a separate proceeding. Finally, the trial court determined that Appellants were not entitled to any tax refund as such taxes had not been paid under protest.

Appellants set forth six points for reversal. They contend that: (1) the grant of summary judgment was error because controverted issues of material fact existed; (2) the 1996 reappraisal was a countywide appraisal for purposes of Amendment 59; (3) section 26-26-306 did not exempt the 1996 taxes from the provisions of Amendment 59; (4) the issue of the 1997 taxes was not moot; (5) the cyclical reappraisal from 1990-95 was a countywide reappraisal subject to the provisions of Amendment 59; and, (6) their taxes need not be paid under protest to be refundable.

*Standard of Review*

We have repeatedly held that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998); *Pugh*, 327 Ark. 577, 940 S.W.2d 445. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Wallace v. Boyles*, 331 Ark. 58, 961 S.W.2d 712 (1998); *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *George*, 337 Ark. 206, 987 S.W.2d 710.

*Genuine Issue of Material Fact*

Appellants argue that summary judgment was inappropriate because they presented evidence that the reappraisals were subject to the provisions of Amendment 59. They further argue that this evidence established the existence of a genuine issue of material fact. Appellees argue on the other hand that there was no genuine issue of material fact because Appellants failed to allege that any reappraisal was conducted pursuant to one of the four procedures outlined in section 26-26-401, and thus Amendment 59 is inapplicable. We disagree with Appellees' contention.

A review of the evidence reveals several conflicting statements made by Ms. Sandlin regarding the nature of these reappraisals. In her affidavit taken on July 10, 1997, Ms. Sandlin stated that she did

not believe that the rollback provision of Amendment 59 applied to any of the taxing units in the county under the circumstances of appraisal conducted by her office for the period of time between 1990 and 1996. Yet, in a letter to Ms. Sandlin dated November 6, 1997, the director stated that the rollback provision was applicable to the reappraisal begun in 1996 and completed in 1997.

Other contradictions appear in Ms. Sandlin's deposition as well. For instance, Ms. Sandlin makes numerous comparisons between the 1990-95 reappraisals and the 1996-97 reappraisals, including the fact that the same techniques were used in both, but then states that only the 1996-97 reappraisal was countywide for purposes of Amendment 59. Ms. Sandlin also stated that she reevaluated all the real property in Benton County between the years 1990-95 and 1996-97, but then later states that she did not believe that what she did in 1990-95 was a countywide reappraisal. Furthermore, Ms. Sandlin even stated that the 1990-95 reappraisal was more comprehensive than the 1996-1997 reappraisal. This series of conflicting statements and discrepancies indicates that Ms. Sandlin was not sure whether or not her actions triggered the provisions of Amendment 59.

This court has consistently held that summary judgment is proper only when the claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. *New Maumelle Harbor v. Rochelle*, 338 Ark. 43, 991 S.W.2d 552 (1999). A mere suspicion in the mind of the party against whom summary judgment is sought will not create a genuine issue of material fact. *Biedenharn v. Hogue*, 338 Ark. 660, 1 S.W.3d 424 (1999). The pleadings, affidavits, and other materials in the present matter, however, give rise to more than a mere suspicion that the reappraisals conducted in Benton County were countywide reappraisals subject to the rollback provision of Amendment 59. There is conflicting evidence regarding the circumstances surrounding the reappraisals. Further development of these facts is required in order to determine the true nature of the reappraisals. Moreover, it is clear in the present matter that the trial court incorrectly resolved any doubts or inferences regarding the nature of these reappraisals against Appellants instead of Appellees. Summary judgment, therefore, was not warranted as a matter of law. *Adams*, 333 Ark. 53, 969 S.W.2d 598;

*Pugh*, 327 Ark. 577, 940 S.W.2d 445. Accordingly, the trial court erred in granting Appellees' motion.

### 1996 Reappraisal

■ Appellants also contend that the trial court erred in finding that the portion of the reappraisal conducted in 1996 did not constitute a countywide reappraisal under Amendment 59 or section 26-26-401. They argue that such a finding was in direct conflict with the evidence that they presented showing that the 1996-97 reappraisal was conducted in accordance with section 26-26-401. Such evidence includes testimony from Ms. Sandlin that the reappraisal was initiated at her behest. She also testified that the reassessment begun in 1996 was a countywide reappraisal and was certified as such by the ACD. The certification letter from the ACD was introduced into evidence as well. Ms. Sandlin further testified that no single taxing unit was completed during the portion of the reappraisal conducted in 1996. Clearly, the evidence before the trial court established the fact that this reappraisal was a countywide reappraisal as set forth in section 26-26-401. Appellees not only failed to introduce evidence that the reappraisal was not countywide, but also conceded on the record that the reassessment begun in 1996 was subject to the provisions of Amendment 59. Accordingly, the trial court erred in finding that the reappraisal begun in 1996 was not a countywide reappraisal.

### Act 836 and Amendment 59

Next, Appellants contend that it was error for the trial court to interpret section 26-26-306(e) as exempting 1996 taxes from the rollback provision of Amendment 59, and thus not entitling them to a refund. The trial court stated that because the taxes from 1996 were due and owing at the time the law took effect, the provisions of section 26-26-306 were inapplicable to those taxes. Appellants argue that the correct interpretation of this section is not that subsection (e) creates an exemption from millage rollbacks, but rather that those taxes due and owing at the time of the effective date need not be recalculated based on pre-assessment values as required by subsection (d).

Section 26-26-306 specifically states that any reappraisal begun in accordance with section 26-26-305, such as the 1996-97 Benton County reappraisal, shall be deemed to be a countywide reappraisal. Furthermore, if a county has begun such a reappraisal, it must use valuations that were applicable prior to the valuation adjustments pending completion of the countywide reappraisal. Section 26-26-306(e) states that:

> Ad valorem taxes which are due and owing on March 26, 1997, shall continue to be due and owing and shall not be affected by the terms of this section.

■ This court has said that in determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). If the language of a statute is clear and unambiguous, and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *Id.* The language in section 26-26-306(e) is unambiguous. The trial court, however, goes beyond the clear language of the section in ruling that the 1996 taxes were not affected by the rollback provision. In his ruling, the trial court stated:

> Section 2(e) of that Act provided that any ad valorem taxes due and owing on the effective date of the Act were not affected by the Act and would continue to be due and owing. The effective date of Act 836 was March 26, 1997. As taxes levied for 1996 were due and owing on that date (See Ark. Code Ann. Sec. 26-35-501(a)(1)), the provisions of Act 836 do not apply to those taxes. Additionally, as stated above, the portion of the second cycle of reappraisal began in 1996 did not constitute a countywide reappraisal under Amendment 59 and/or Ark. Code Ann. Sec. 26-26-401 et seq., and accordingly, a rollback of millage rates was not required for that year and Plaintiffs are not entitled to a refund of taxes paid for that year.

The trial court based its finding that a rollback was not required on an erroneous interpretation of section 26-26-306. Logic does not dictate reading this section in a manner that excludes the 1996 taxes from the rollback provision of Amendment 59.

■ The trial court's interpretation of subsection (e) that any taxes due and owing are not subject to a rollback essentially carves

out an exception to the requirements of Amendment 59. As this court held in *Hoyle v. Faucher*, 334 Ark. 529, 975 S.W.2d 843 (1998), the attempt of Act 758 to circumvent the rollback provisions of Amendment 59 was unconstitutional. Likewise, any attempt to now interpret the provisions of Act 836 in a manner inconsistent with the dictates of Amendment 59 is also invalid.

## *Mootness*

■ On this point for reversal, Appellants argue that the trial court erred in finding that the issue surrounding the 1997 taxes was moot because the county had begun to complete the rollback of millage rates for the reappraisal ending in 1997. As Appellants correctly point out, for this issue to be moot there must be no controversy, thus rendering any decision in the case a mere advisory opinion. *See Jenkins v. Bogard*, 335 Ark. 334, 980 S.W.2d 270 (1998). In the present matter, Appellants allege that there is indeed a controversy because they presented evidence that the rollback was not conducted in accordance with the requirements of Amendment 59. Appellants introduced the calculations of the county clerk used by the taxing authorities to determine the amount of any rollback. Those calculations evidenced the fact that the increases from 1996 were completely excluded and the values from 1997 were the only ones considered. Appellants argue that this was invalid, thus creating a genuine issue of material fact that must be resolved. We agree.

■ The trial court made a decision regarding the disputed fact of whether the 1996 figures should be used in rollback calculations. This decision was based on its erroneous finding that 1996 was not a countywide reappraisal. Appellees had the burden of establishing that there was no disputed fact. They failed to meet this burden with any proof that the method of calculating the rollback did not violate Amendment 59. On the other hand, Appellants submitted proof to establish that the 1996 figures had been discarded. This court has said on numerous occasions that at the summary-judgment stage any doubts or inferences must be resolved against the moving party. *National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996). The trial court did not follow the law in this regard, and therefore, its ruling on this point was erroneous.

## 1990-95 Reappraisal

 Appellants argue that the 1990-95 reappraisal program was in fact a countywide reappraisal subject to the provisions of Amendment 59. The record indicates that the appraisal begun in 1990 was for the purpose of maintaining assessed values of real property at twenty percent of the fair-market value as required by the law. As previously pointed out, there is contradictory evidence regarding whether this reappraisal constituted a countywide reappraisal. The burden is on the moving party to establish that there are no genuine issues of material fact in controversy. *Quirk*, 323 Ark. 769, 918 S.W.2d 138. Appellees have clearly failed to meet this burden.

It is apparent in this case that Appellants were not given the benefit of the doubt. The only evidence put forth by Appellees to support their argument that this was not a countywide reappraisal was the fact that none of the four requirements of section 26-26-401 were met. Appellants on the other hand put forth proof to support their contention that it was a countywide reappraisal, including statements by the assessor that it was in fact countywide.

Appellants also contend that two of the requirements of section 26-26-401 were actually met. First, Appellants argue that subsection (2) which requires that the appraisal be at the "directive of law enacted by the General Assembly" is applicable because Sandlin testified in her deposition that she began the 1990 reappraisal in order to keep her assessment records current, as mandated by section 26-26-302. Appellants also argue that the appraisal conforms with subsection (3) because it was instigated at the behest of the assessor, even though the appraisal was never certified by ACD. Appellants contend that it is enough that the assessor initiated the reappraisal, and she should not be rewarded for failing to seek certification by exempting the appraisal from the scope of Amendment 59.

 Appellees allege repeatedly that Amendment 59 provides that the General Assembly may determine which reappraisals qualify for Amendment 59. Amendment 59 states in relevant part:

> (a) Whenever a countywide reappraisal or reassessment of property subject to ad valorem taxes made in accordance with

> procedures established by the General Assembly shall result in an increase in the aggregate value of taxable real and personal property in any taxing unit in this State of ten percent (10%) or more over the previous year the rate . . . be adjusted or rolled back, by the governing body of the taxing unit, for the year for which levied as provided below. The General Assembly shall, by law, establish the procedures to be followed by a county in making a countywide reappraisal or reassessment of property which will, upon completion, authorize the adjustment or rollback of property tax rates or millage, as authorized hereinabove.

This court has said that, when interpreting a provision of the Arkansas Constitution, if the language of a provision is plain and unambiguous, each word must be given its obvious and common meaning, and neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Hoyle*, 334 Ark. 529, 975 S.W.2d 843 (citing *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998)). This court went on to hold in *Hoyle* that section 26-26-401 did in fact describe the correct procedure for initiating a *bona fide* reappraisal, but further stated that establishing a procedure was far different from exempting county reappraisals from a millage rollback. *Id.*

▮ Interpreting section 26-26-401 as Appellees urge, their argument essentially carves out an exception to Amendment 59. There was evidence in the record that established the fact that the ACD does not certify these reappraisals unless requested to do so by the assessor. If subsection (3) is interpreted to mean that a reappraisal is never countywide unless certified, then assessors in each county will be able to avoid the rollback provision of Amendment 59 by never seeking certification from ACD when conducting reappraisals. Such an interpretation defeats the intent and purpose of Amendment 59. While we do not presume to interpret the meaning of the statute at this stage of the proceedings, we point out that we have already concluded that there are issues of fact in controversy that need to be developed and those issues should not be resolved in a manner inconsistent with the spirit of Amendment 59 or this court's prior case law.

## Voluntary Payment of Taxes

 For their final point on appeal, Appellants argue that the trial court erred in finding that taxes were not refundable unless paid under protest. First, Appellants contend that any taxes paid after this action was filed were paid involuntarily. This action was filed in 1997, thus, they argue that because the taxes paid in 1997 would have been for the tax year 1996, any taxes from that point on would certainly be involuntary. This court recently reaffirmed the rule that taxes paid voluntarily are not recoverable. *Hoyle*, 334 Ark. 529, 975 S.W.2d 843. However, this court went on to hold in *Hoyle* that taxes paid after the filing of a complaint are deemed to be taxes paid under protest and, thus, not voluntary.

 Appellees concede that the trial court erred with respect to this point, but argue that because the taxes levied for 1996 were not illegal, any issue of voluntary payment is rendered moot. They base this argument on the trial court's erroneous determination that section 26-26-306 exempted the 1996 tax payments from the rollback provision of Amendment 59. Thus, Appellees' argument on this point fails.

 Appellants next argue that the trial court erred in finding that Appellants were not entitled to a refund of any taxes unless they were paid under protest. They contend that the common law should govern because there is no statute that requires payment under protest in the present situation. While it is true that there is no applicable statutory requirement for payment under protest, this court has held that it always follows the common-law rule prohibiting the recovery of voluntarily paid taxes. *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982), *cert. denied*, 462 U.S. 1111 (1983). This court in *Cash* also held that this common-law rule applied to illegal exactions. Likewise, in *Mertz v. Pappas*, 320 Ark. 368, 896 S.W.2d 593 (1995), this court held that taxes voluntarily paid prior to the time when a suit was filed were not recoverable. In *Mertz*, this court set out the underlying principle behind its rule:

> When taxes are paid to a government they are deposited into that government's general revenues and ordinarily are spent within that tax year. However, when the government is put on notice that it may be required to refund those taxes, it can make the appropriate

allowances for a possible refund. *See Hercules, Inc.* 319 Ark. at 707, 894 S.W.2d at 578. If we were to allow refunds for taxes voluntarily paid in previous years, it would jeopardize current and future governmental operations because current and future funds might be necessary for the refund.

*Id.* at 370, 896 S.W.2d at 594.

Appellants argue that voluntary is not used in its ordinary sense, but instead requires the existence of certain facts. Those facts include: (1) whether the payment was made with full knowledge of the facts; and (2) whether there was coercion involved. Appellants essentially argue that because a taxpayer must pay taxes or face the possibility of losing his property, coercion is a factor in this case. Appellees respond that this argument is without merit, even if it is determined that the taxes are illegal, and cites to cases holding coercion must amount to a situation where the taxpayer has no other relief available to him. *See Chapman & Dewey Land Co. v. Board of Directors of St. Francis Levee Dist.*, 172 Ark. 414, 288 S.W. 910 (1926).

In *Brunson v. Board of Directors of Crawford County Levee Dist.*, 107 Ark. 24, 27, 153 S.W. 828, 829 (1913), this court held that:

> Where a party pays an illegal demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release (not to avoid) his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back.

The court went on to hold in *Brunson* that the payments were voluntary because there was no immediate danger that the appellant would lose his property or suffer irreparable harm for failing to pay his taxes. Conversely, in *Paschal v. Munsey*, 168 Ark. 58, 268 S.W. 849 (1925), this court held that taxes were not paid voluntarily where the tax collector had the authority to take and sell the appellants' land for failing to pay their taxes.

In *Chapman*, 172 Ark. 414, 288 S.W. 910, this court held that coercion that renders a payment of taxes involuntary must consist of some actual or threatened exercise of power possessed by the party exacting or receiving payment over the person or prop-

erty, from which the latter has no reasonable means of immediate relief, except by making payment. Appellants contend that the statutory scheme governing the nonpayment of property taxes satisfies the requirement of coercion. They point to Ark. Code Ann. § 26-34-101 (Repl. 1997) to support their argument. This section provides in relevant part:

> (a) Taxes assessed upon real and personal property shall bind them and be entitled to preference over all judgments, executions, encumbrances, or liens whensoever created.

> (b) All taxes assessed shall be a lien upon and bind the property assessed from the first Monday of January of the year in which the assessment shall be made and shall continue until the taxes, with any penalty which may accrue thereon, shall be paid.

Appellants further argue that the procedure for handling property not redeemed through payment of delinquent taxes provides additional support that their taxes were not paid voluntarily. *See* Ark. Code Ann. § 26-37-101 (Repl. 1997).

■ Appellants also point out that their pleadings contain statements that any taxes paid were not paid with full knowledge of the facts that rendered the demand illegal. They contend that there was no information available prior to the filing of the lawsuit that would have alerted the taxpayer that the assessment was illegal. They argue that the issue of whether there was full knowledge is a fact in dispute. We agree. Clearly, there are genuine issues of material fact surrounding the payment of taxes resulting from the 1990-95 reappraisal. These issues are whether the tax payments were made as a result of coercion and whether the payments were made with full knowledge of the facts. Accordingly, these issues require further development at the trial-court level in order to determine whether the taxes were paid voluntarily.

■ In sum, because there are genuine issues of material fact surrounding the nature and scope of the Benton County reappraisals, the calculation of the rollback resulting from the 1996-97 reappraisal, as well as the voluntariness of taxes paid, we reverse the trial court's grant of summary judgment and remand this matter for proceedings consistent with this opinion.

Reversed and remanded.

G. WILLIAM LAVENDER, Spl. J., joins in this opinion.

ARNOLD, C.J., and THORNTON, J., dissent.

SMITH, J., not participating.

W H. "DUB" ARNOLD, Chief Judge, dissenting. I disagree
with the majority as to the payment of taxes for the
years 1990-95. The trial judge ruled that the appellants were not
entitled to a refund of these taxes as they were not paid under
protest. This court has consistently followed the common-law rule
that prohibits the recovery of voluntarily paid taxes unless paid
under protest.

The facts present in this case are similar to the facts in *Mertz v.
Pappas*, 320 Ark. 368, 896 S.W.2d 593 (1995). The appellants in the
instant case did not plead, nor did they prove that there were any
uncollected delinquent taxes as a result of the taxes levied for the
years 1990 through 1995. In *Mertz*, this court held:

> Appellants do not have a claim because the taxes were volun-
> tarily paid before suit was filed. We have consistently followed the
> common law rule that prohibits the recovery of voluntarily paid
> taxes, except where a recovery is authorized by a statute without
> regard to whether the payment is voluntary or compulsory. *See,
> e.g., City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229
> (1982); *Searcy County v. Stephenson*, 244 Ark. 54, 424 S.W.2d 369
> (1968); *Thompson v. Continental Southern Lines, Inc.*, 222 Ark. 108,
> 257 S.W.2d 375 (1953). We follow this rule even when an illegal
> exaction claim is based on constitutional grounds. *Cash*, 277 Ark.
> at 504-05, 644 S.W.2d at 233. When recovery is authorized by
> statute upon payment "under protest," we literally require a pay-
> ment "under protest." *Hercules, Inc. v. Pledger*, 319 Ark. 702, 894
> S.W.2d 576 (1995). There is an exception for payment under
> coercion, *see Cash*, 277 Ark. at 505, 644 S.W.2d at 233; *Chapman
> & Dewey Land Co. v. Board of Directors*, 172 Ark. 414, 288 S.W. 910
> (1926), but that exception is not applicable to the case at bar.
>
> The reasoning underlying our cases is sound. When taxes are
> paid to a government they are deposited into that government's
> general revenues and ordinarily are spent within that tax year.
> However, when the government is put on notice that it may be
> required to refund those taxes, it can make the appropriate allow-
> ance for a possible refund. *See Hercules, Inc.*, 319 Ark. at 707, 894
> S.W.2d at 578. If we were to allow refunds for taxes voluntarily

paid in previous years, it would jeopardize current and future governmental operations because current and future funds might be necessary for the refund.

320 Ark. at 370, 896 S.W.2d at 594.

As recently as March of this year, this court handed down two decisions that reaffirmed the common-law rule that prohibits the recovery of voluntarily paid taxes. *See Oxford v. Perry*, 340 Ark. 577, 13 S.W.3d 567 (2000); *Elzea v. Perry*, 340 Ark. 588, 12 S.W.3d 213 (2000). We are bound to follow prior case law under the doctrine of *stare decisis*, and that policy is designed to lend predictability, as well as stability, to the law. *Liberty Mutual Insurance Co. v. Thomas*, 333 Ark. 655, 971 S.W.2d 244 (1998). In *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968), this court held that precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. There is no reason to depart from established precedent in the instant case. In *Lord v. Mazzanti*, 339 Ark. 25, 2 S.W.2d 76 (1999), this court concluded that there was no reason for the court to reverse its interpretation of its own rules and throw precedent to the "four winds"; unfortunately, I believe that is exactly what the majority is doing in this case.

The majority acknowledges our holding in *Mertz v. Pappas, supra,* as well as other similar cases, yet hinges its reversal on the supposition that there are issues present of whether the tax payments were made as a result of coercion and whether the payments were made with full knowledge of the facts. In so doing, the majority accepts the argument of the appellants that since the tax is a lien on real property, *any* payment would be considered "under coercion." This argument is absurd. If this were true, *all* tax payments would be paid "under coercion," which logically is not the case. Although voluntary payments existed in, *Mertz, Oxford,* and *Elzea,* this court held that in each case voluntary payments could not be recovered. If the majority is correct, then we were wrong in each of the prior cases.

A taxpayer has the right to question an illegal tax but not years later, after voluntary payment. If a taxpayer wants to question real property taxes, he or she may do so in one of two ways — either the taxes must literally be paid "under protest," or a suit must be filed before payment. It is neither fair nor right for a person to pay

real property taxes while silently objecting to the payment, and then expect a refund years after the tax has been paid.

This court held in *Mertz* that if we were to allow refunds for taxes voluntarily paid in previous years, it would jeopardize current and future governmental operations because current and future funds might be necessary for the refund. That is exactly the situation present in the instant case. We know that school districts and governmental units customarily spend all of their money designated for a particular year. If these school districts have to repay tax money for the years of 1990 through 1995, how will they do this? Current funds, as well as future funds, will undoubtedly have to be used; this means the children will suffer. The districts will have to evaluate what will be taken away first: athletics, school activities, or personnel. All of this could be avoided by simply following the common-law rule that there will be no recovery for taxes voluntarily paid without protest. I would follow the wisdom of the trial judge and affirm.

For these reason, I respectfully dissent.

THORNTON, J., joins.