CHAPMAN & DEWEY LAND COMPANY v. BOARD OF DIRECTORS
OF ST. FRANCIS LEVEE DISTRICT.

Opinion delivered December 20, 1926.

1. LEVEES—RECOVERY OF TAXES ILLEGALLY ASSESSED.—Where plaintiff paid levee taxes illegally assessed on land which had been taken by the levee district for levee purposes, he cannot recover such taxes, though he did not know how much of his land had been appropriated, since his payment was voluntary, and by refusing to pay he could have made his defense in the suit which the district would have had to bring to collect the taxes.

2. TAXATION—RECOVERY OF WRONGFUL TAXES—COERCION.—The coercion which will render a payment of taxes involuntary must consist of some actual or threatened exercise of power, from which the taxpayer has no reasonable means of immediate relief, except by making payment.

3. APPEAL AND ERROR—HARMLESS ERROR.—Refusal to transfer an action to recover taxes paid to a levee district to the chancery court was not prejudicial, both because the circuit court was the proper forum, and because, if the cause had been transferred to equity, the result would have been the same.

Appeal from Crittenden Circuit Court; *W. W. Bandy*, Judge; affirmed.

STATEMENT BY THE COURT.

Chapman & Dewey Land Company brought this suit in the circuit court against the board of directors of the St. Francis Levee District to recover $3,138.84 for taxes which, it claimed, had been illegally levied and collected on its lands.

Under the allegations of the complaint, the plaintiff is the owner of large bodies of land in Mississippi and Poinsett counties, in the State of Arkansas, which are in two drainage districts created under the laws of the State of Arkansas by the General Assembly of 1917. Said drainage districts filed plans and specifications for the construction of drainage systems in said counties, and, under their plans, certain lands belonging to the plaintiff were condemned and appropriated by the drainage districts for right-of-way purposes. The amount of land so taken was used in constructing drainage ditches, levees, and that part of the improvement known as flood-

ways.   Notwithstanding the condemnation of said lands, said drainage districts demanded and collected from the plaintiff drainage and levee taxes upon said lands for the years 1918, 1919 and 1920.

Plaintiff filed an amended complaint which alleges that the acts creating said drainage districts set out what lands were embraced within the districts, but did not prescribe the location of the ditches.   After the creation of said districts, plans and specifications were filed showing what part of the lands of the plaintiff were to be used in constructing the ditches, levees and floodways, but no survey was made showing the amount and location of said lands.   After the improvement had been completed in 1921, and it was definitely known what lands had been actually taken, they were stricken from the taxbooks of the levee district.   The amended complaint also alleges that, prior to 1921, it was impossible for the plaintiff to locate the lands actually taken by the drainage districts for the construction of the drainage ditches and levees.

The circuit court sustained a demurrer to the complaint and to the amended complaint, and, the plaintiff refusing to plead further, its complaint was dismissed. The case is here on appeal.

*W. Chapman Dewey* and *Wils Davis,* for appellant.
*Mann & McCulloch,* for appellee.

HART, J., (after stating the facts).   The judgment of the circuit court was correct, according to the principles of law decided in *Brunson* v. *Board of Directors,* 107 Ark. 24, 153 S. W. 828.   In that case a landowner in a levee district made a payment of levee taxes under an illegal assessment, with knowledge of the fact, and it was held that the payment was voluntary and that the taxes could not be recovered.   In that case, as here, if the landowner had refused payment of the improvement district taxes to the collector, the latter would have had no authority to sell the lands to enforce payment.   Under the statute, the board of directors would be required to institute an action in the chancery court to collect the taxes.   The landowner could make his defense in that suit, and thus would have

had his day in court. *White River Lumber Co.* v. *Elliott,*
146 Ark. 551, 226 S. W. 164, and *Paschal* v. *Munsey,* 168
Ark. 58, 268 S. W. 849.

Under these decisions, the coercion which will ren-
der a payment of taxes involuntary must consist of some
actual or threatened exercise of power possessed by the
party exacting or receiving payment over the person or
property from which the latter has no reasonable means
of immediate relief except by making payment.

But it is insisted by counsel for the plaintiff that the
taxes alleged in the complaint takes the case at bar out of
the operation of the principle decided in these cases and
brings it within the rule announced in *Dickinson* v. *Hous-
ley,* 130 Ark. 260, 197 S. W. 25. We do not think so. In that
case the collector refused to accept any sum less than
the full amount demanded, and had the power to have
sold the lands of the taxpayer in payment of the illegal
tax. This would have constituted a cloud upon the title,
and it became necessary for the owner to pay the illegal
demand in order to prevent the sale. No such power
existed in the board in the case at bar. If the plaintiff
had refused to pay the taxes, the board of directors would
have been compelled to institute proceedings against the
landowner in the chancery court to collect the taxes, and
the plaintiff could have presented the same matters as
are set up in this case to defeat the collection of the taxes.
In short, it could have defended a suit to collect the taxes
upon the same ground that it bases its right to recover
the taxes which it voluntarily paid.

It is true that the amended complaint sets up the fact
that it did not definitely know how much of its land had
been taken for the construction of the drainage ditches,
levees and floodways until it had paid the taxes for the
years 1918, 1919 and 1920. But it could have required the
levee districts to have set forth and shown how much
land had been taken for the construction of the proposed
improvements before they could have recovered the taxes.
In other words, the burden of proof would have been
upon the board of directors to have shown how much

taxes were due before they could have recovered any amount. In ascertaining this fact, they would have had to eliminate the lands which they had taken in the construction of the improvements in the various ways set out above.

It is also insisted by counsel for the plaintiff that the court erred in refusing to transfer the case to the chancery court, as requested by it after it had filed its amended complaint. In the first place, it may be said that the circuit court was the proper forum in which to bring the action. *Brunson* v. *Board of Directors,* 107 Ark. 24, 153 S. W. 828. In the next place, if the case had been transferred to the chancery court the result must have necessarily been the same. It would have been the duty of the chancery court to have decided the principles of law as they were decided by the circuit court. Hence no prejudice whatever could have resulted to the plaintiff by the failure to transfer the case to equity.

It follows that the judgment of the circuit court was correct, and it will therefore be affirmed.