The Honorable John Bynum Prosecuting Attorney P.O. Box 1587 Russellville, AR 72801
Dear Mr. Bynum:
This is in response to your request for an opinion concerning the refunding of taxes erroneously assessed and paid. Your questions arise in light of the decision in Clark v. Union Pacific R.R. Co.,294 Ark. 586, 745 S.W.2d 600 (1988), and Opinion No. 88-238 issued by this office, (a copy of which is enclosed). The Clark decision held that Amendment 59 requires the exemption of personal property from a new school levy in Cross County until such time as the rates were equalized. Opinion No. 88-238 opines that although taxing entities not parties to the Clark litigation are not automatically required to make taxpayer refunds of the amounts collected by virtue of the levy against personal property, refunds may be required to individual taxpayers who pursue the statutory remedy granted in A.C.A. 26-35-901. Your questions concern these refunds, and are restated as follows:
 1) What proof should the taxpayer be required to furnish the County Court upon making application for a refund?
2) Who is responsible for the cost of the refund?
3) Is the taxpayer due any interest on the refund?
 4) How long should the county hold these funds, and to whom do the excess funds, which are not refunded, belong?
The relevant statutory provision, A.C.A. 26-35-901, provides:
 (a) In case any person has paid taxes on any property, real or personal, erroneously assessed, upon satisfactory proof being adduced to the county court of the fact, the court shall make an order refunding to the person the amount of the county tax so erroneously assessed and paid.
 (b)(1) Upon production of a certified copy of the order to the Auditor of State, he shall draw his warrant on the Treasurer of State for the amount of state tax erroneously assessed and paid.
 (2)(A) The warrant shall be paid out of the appropriation to pay moneys arising from the erroneous assessment and collection of taxes.
 (B) In case there shall be no appropriation or the appropriation shall have been exhausted, then the Auditor of State shall issue a certificate of indebtedness.
In response to your first question, it is my opinion that the degree of proof required will in large part depend upon the county court. That court must be satisfied that a tax has been erroneously assessed and paid. The particular documents and/or other means employed to satisfy the court may vary with individual litigants. As long as the court can satisfy itself from the proof presented that a tax in fact has been erroneously assessed and paid, the proof will be sufficient. The subjectivity of the proof requirement emanates from the statute itself.
There are some other relevant factors to be considered by the county court, although they are not concerned precisely with the degree of "proof" required. The first of these is the common law "voluntariness" doctrine which prohibits the refunding or recovery of tax monies voluntarily paid. (See most recently, City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982), and, generally, Williams v. Miller Levee Dist. No. 2, 179 Ark. 299,15 S.W.2d 986 (1929); Chapman Dewey Land Co. v. Board of Directors of St. Francis Levee District, 172 Ark. 414, 288 S.W. 910 (1926); Paschal v. Munsey, 168 Ark. 58, 268 S.W. 849 (1925); Walton v. Arkansas County, 153 Ark. 285, 239 S.W. 1054 (1925); and Town of Magnolia v. Sharman Co., 46 Ark. 358, (1885). The premise of the rule is that a taxpayer who is assessed an illegal tax is charged with knowledge of the law, and therefore the illegality of the tax. He must therefore refuse to pay the tax, invite the taxing entity to sue him and set up the illegality of the tax as his defense. An exception has developed, however, where the taxing entity or its agents have the power to sell the property subject to taxation. Because the sale would constitute a cloud on the title to the property, the courts have allowed the taxpayer to pay the tax, and thereafter sue for its recovery. Paschal and Walton, supra. It is my opinion that, generally, a taxpayer paying school taxes levied against personal property in violation of Amendment 59's rollback provisions would fall within the exception to the "voluntariness" requirement because A.C.A.26-36-206 gives the collector the right to distrain and sell personal property of a taxpayer refusing to pay the levy. As such, in these cases, the common law "voluntariness" doctrine should not present an impediment to the recovery of a taxpayer under Section 26-35-901. Paschal, supra. Additionally, it is questionable whether the common law "voluntariness" doctrine would operate to impede a statutorily granted refund procedure. See Garland County v. Gaines, 47 Ark. 558, 2 S.W. 460 (1886). Similarly, that provision (26-35-901) has been held to provide for only the recovery of those taxes which are based upon the valuation of property, (Walton v. Arkansas County, supra), and not to special assessments, (Williams, supra). With these principles in mind, we turn to your second question. The answer to this question must be given in light of statutory construction, legislative history, and all relevant case law.
At first blush, the statute itself seems to require that refunds of all erroneously paid taxes are to be paid by the state out of moneys appropriated for that purpose. The statute provides for the issuance of an order by the county court and then provides for presentation of the order to the State Auditor. The statute does, however, in subsection (a), provide that the order shall refund the amount of county tax erroneously paid, whereas subsection (b) provides that the State Treasurer refund the amount of state tax erroneously paid. But, if the statute applies only to taxes which are based upon property valuation, why would the statute provide a separate refunding procedure for state taxes, none of which are based upon the valuation of property?
The statute, A.C.A. 26-35-901 (Act 114 of 1883, 209), was, in its original form, one sentence. The codifiers of the new Code apparently were under the assumption that the statute contemplated two different kinds of refunds: one for the local level, and one for the state level. As such, they split the one-sentence statute into subsections (a) and (b). This conclusion is consistent with language found in Clay County v. Brown Lumber Company, 90 Ark. 413, 119 S.W. 251 (1909). The court in the Clay case, after quoting what is now subsection (a) in the new Code, goes on to note, "and this section also makes provision relative to the refunding of the State tax." 90 Ark. at 416. Additionally, it has been held that alleging the present location of the erroneously paid tax is vital to recovery under the statute. First National Bank v. Norris, 113 Ark. 138, 167 S.W. 481 (1914). The location of the tax money erroneously collected would be of little import if all refunds whether for local or state taxes, are to come from a state appropriation.
It is therefore my opinion that in the present situation the refund should be paid from the fund to which the erroneous amount collected has been credited. If the funds are being held in escrow, as I believe is the case in some counties, the county court should order the refund from the escrowed funds. If the tax erroneously collected is still in the collector's account, then the county court should order the County treasurer to make payment from that fund. If the funds have already been credited to the account of a particular school district, then the refund is to be made from that fund. See, Texarkana Special School District v. Ritchie Grocer Company, 183 Ark. 881, 39 S.W.2d 289 (1931).
In my opinion, the answer to question three is "no." In addition to the fact that the statute makes no provision for the payment of interest, I am concerned that the payment of interest on these types of refunds may be violative of Arkansas Constitution Art.16, 1.
With regard to your fourth question, in my opinion the statute of limitations for an action under 26-35-901 is three years. (See A.C.A. 16-56-105, and Garland County v. Gaines, 47 Ark. 558,2 S.W. 460 (1886)). Thus, an aggrieved taxpayer must begin the cause of action within that time period, and the taxing entity, (whoever has the money), will be held responsible for the refund. Thereafter, the action will be barred by the statute. Taxing entities should therefore be cognizant of the fact that they may be required to make refunds until the expiration of this period.
In response to the second part of your fourth question, it is my opinion that to the extent the improperly collected funds are not refunded individually under 26-35-901, and to the extent the county or other taxing entity does not refund the monies of its own volition, the tax monies collected belong to the school districts. This conclusion is mandated by Arkansas Constitution Art. 16, 11, which provides that ". . . no moneys arising from a tax levied for one purpose shall be used for any other purpose", and by Bell v. Crawford County, 287 Ark. 251, 697 S.W.2d 910 (1985).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.