Richard WEISS, Director, Arkansas Department of Finance and
Administration *v.* Mary CHAVERS, On Behalf of Herself
and All Other Similarly Situated Persons

03–805 184 S.W.3d 437

Supreme Court of Arkansas
Opinion delivered June 3, 2004

608

610

*Martha G. Hunt*, Chief Counsel, Revenue Legal Counsel, for appellant.

*Rose Law Firm*, by: *Gary J. Garrett* and *Craig S. Lair*, for appellee.

R AY THORNTON, Justice. On November 9, 1994, an illegal-exaction complaint was filed by William and Winnie Bolding, later joined by appellee, Mary Chavers, on behalf of all similarly-situated taxpayers against appellant, Richard Weiss, Director of the Arkansas Department of Finance and Administration. In their complaint, the Boldings and Ms. Chavers, who lived in Louisiana, and paid taxes in Arkansas, asserted that Ark. Code Ann. § 26-51-301 (Supp. 1993) violated the United States Interstate Commerce Clause, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and the Privileges and Immunities Clause

of the United States Constitution.[1] The challenged statutory provision permitted individuals who were residents of Arkansas for the entire tax year to use a reduced tax table in calculating their income taxes.

---

[1] At the time the complaint was filed, Arkansas Code Annotated § 26-51-301 provided:

(a) There shall be exempted from state individual income tax the following income categories:

(1) A single individual whose gross income does not exceed five thousand five hundred fifty dollars ($5,550) for any income year;

(2) A married couple filing jointly whose gross income does not exceed ten thousand dollars ($10,00) for any income year;

(3) An unmarried head of household, whose gross income for any income year does not exceed seven thousand one hundred fifty dollars ($7,150).

(b) However:

(1) Any single individual whose gross income for the taxable year is more than five thousand five hundred fifty dollars ($5,550) but not more than eleven thousand four hundred dollars ($11,400) may compute the income tax payable on the income in excess of five thousand five hundred fifty dollars ($5,550) from Reduced Tax Table A in § 26-51-302;

(2) Any married couple filing jointly whose gross income for the taxable year is more than ten thousand dollars ($10,000) but not more than sixteen thousand two hundred dollars ($16,200) may compute the income tax payable on the income in excess of ten thousand dollars ($10,000) from Reduced Tax Table B in § 26-51-302;

(3) Any head of household whose gross income for the taxable year is more than seven thousand one hundred fifty dollars ($7,150) but not more than sixteen thousand two hundred dollars ($16,200) may compute the income tax payable on the income in excess of seven thousand one hundred fifty dollars ($7,150) from Reduced Tax Table C in § 26-51-302.

(c) As used in this section, the term "head of household" shall have the same meaning as defined in section 2(b) of the federal Internal Revenue Code of 1986, in effect on January 1, 1991.

(d) To be eligible to use the reduced tax tables, an individual must be a resident of Arkansas for the entire taxable year.

(e) The reduced tax tables cannot be used if the six thousand dollar ($6,000) exemption provided for in either §§ 26-51-306 or 26-51-307 is claimed or if the taxpayer itemizes deductions.

(f)(1) Only the persons defined in this section may enjoy the special gross income exemption and the use of the reduced tax tables of § 26-51-302.

(2) All other persons not falling within these specifically defined categories are subject to the income tax rates provided in § 26-51-201.

We have considered two previous appeals relating to this matter. The first appeal was an interlocutory appeal from the trial court's denial of a petition for class certification. *See Carson v. Weiss,* 333 Ark. 561, 972 S.W.2d 933 (1998). We reversed the trial court's denial on the basis that an illegal-exaction suit, pursuant to Article 16, section 13 of the Arkansas Constitution, is a class action "as a matter of law." *Carson, supra.* The case was remanded to the trial court for further proceedings as a class action.

Upon remand, the trial court considered several motions for summary judgment and made numerous findings, including that the Department of Finance and Administration ("DF&A") had coerced the payment of taxes for the years of 1991, 1992, and 1993, as well as those levied for 1994, the year this litigation commenced.[2] The trial court's ruling that the taxes were not voluntarily paid has not been reviewed by this court. Other issues, such as the creation of a refund account, have not yet been considered by this court.

On April 28, 2000, Ms. Chavers filed a "motion to complete judgement and application for approval of refund plan and appointment of refund administrator, approval of incentive award, and approval of fees and expenses of class counsel." In response to this motion the trial court: (1) outlined a method for taxpayer refunds; (2) appointed the Rose Law Firm to oversee the refund process; (3) denied Ms. Chavers's request for incentive pay; (4) concluded that there was a common fund whereby attorney's fees could be paid; and (5) awarded Ms. Chavers's attorney's fees "in the amount equal to twenty-eight percent of the final amount of money available for distribution to the taxpayers."

On December 4, 2001, a plan of distribution was entered by the trial court. The plan outlined the procedure to be followed for distributing the damages to the members of the class. The plan required that "if any taxpayer has not filed a claim three years after

---

(3) However, nothing in this section or § 26-51-302 shall be construed to prevent any person covered by this section or § 26-51-302 from electing to be taxed under the tax rates set forth by § 26-51-201 (a) and (b).

Ark. Code Ann. § 26-51-301 (emphasis added).

[2] We note that Act 1160 of 1995 repealed Ark. Code Ann. § 26-51-301 (d) and that pursuant to Revenue Policy Statement 1995-1, non-resident and part-year residents who filed returns for tax year 1994 were administratively afforded the benefits of the reduced tax rates if they met all other requirements.

initial advertisement of the right to make a claim, then after the expiration of such three year period no additional claims will be accepted and the State of Arkansas will receive the individual portion of the final judgment payable to all taxpayers that did not file claims." The distribution plan was appealed to our court. *See Fisher v. Chavers,* 351 Ark. 318, 92 S.W.3d 30 (2002). We concluded that the plan was not a final order and dismissed the appeal. *Id.*

This appeal is from the final order and judgment entered on · April 8, 2003. In that order, the trial court adopted its earlier findings and further concluded that Ark. Code Ann. § 26-51-301(d) violated the Equal Protection Clause of the United States Constitution, and the Privileges and Immunities Clause of the United States Constitution. It is from this order that appellant and appellee appeal. Appellant raises four points for our consideration. After considering the issues, we conclude that the trial court erred in finding that the payment of taxes for the tax years 1991, 1992, and 1993 was coerced and we reverse the trial court's order. Appellee raises one point in a cross appeal for our consideration. Because we conclude that the trial court erred in awarding a refund of voluntarily paid taxes, we need not address appellee's cross appeal.

We note that this appeal is our first opportunity in this proceeding to consider the application of the common-law rule that taxes paid voluntarily may not be recovered in an illegal-exaction suit.

 Appellant appeals from the trial court's order granting partial summary judgment to appellee. Both parties filed motions seeking summary judgment. We discussed the standard of review to be applied in cases in which both parties filed motions for summary judgment in *McCutchen v. Patton,* 340 Ark. 371, 10 S.W.3d 439 (2000). We wrote:

> The parties filed opposing motions for summary judgment and thus, in essence, agreed that there are no material facts remaining. Summary judgment, therefore, was an entirely appropriate means for resolution of this case. As we have oft stated, summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the

> existence of a material issue of fact. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

*Id.* (internal citations omitted).

In his first point on appeal, appellant argues that the trial court erred when it found that the taxpayers involuntarily paid the alleged illegal taxes for the tax years of 1991, 1992, and 1993. Appellant also contends that the trial court erred when it refused to apply the voluntary-payment rule to appellee's illegal-exaction suit. We recognize that taxes paid after the filing of the illegal-exaction complaint are considered to have been involuntarily paid. *See Elzea v. Perry*, 340 Ark. 588, 12 S.W.3d 213 (2000). However, taxes paid before the filing of an illegal-exaction complaint are considered to have been voluntarily paid. We have consistently followed the common-law rule that prohibits the recovery of voluntarily-paid taxes, except where a recovery is authorized by a statute without regard to whether the payment is voluntary or compulsory. *Elzea, supra.* We have described the common-law rule as follows:

> Where a party pays an illegal demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release (not to avoid) his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back. And the fact that the party, at the time of making the payment, files a written protest, does not make the payment involuntary.

*City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982). We follow this rule even when an illegal-exaction claim is based on constitutional grounds. *Elzea, supra.*

In *Mertz v. Pappas*, 320 Ark. 368, 896 S.W.2d 593 (1995), we explained the rationale behind the voluntary-payment rule. Specifically, we explained:

> When taxes are paid to a government they are deposited into that government's general revenues and ordinarily are spent within that

tax year. However, when the government is put on notice that it may be required to refund those taxes, it can make the appropriate allowance for a possible refund. If we were to allow refunds for taxes voluntarily paid in previous years, it would jeopardize current and future governmental operations because current and future funds might be necessary for the refund.

*Id.* (internal citations omitted).

■■ The general rule is that taxes paid before litigation commences are voluntary, while payments made after litigation has commenced are involuntary. Our case law suggests that another exception to the voluntary-payment rule may be sustained if the payments were made under coercion. *Id.* In *Chapman & Dewey Land Co. v. Board*, 172 Ark. 414, 288 S.W. 910 (1926), we discussed this exception:

> The coercion which will render a payment of taxes involuntary must consist of some actual or threatened exercise of power possessed by the party exacting or receiving payment over the person or property from which the latter has no reasonable means of immediate relief except by making payment.

*Id.* We have applied this exception in several cases. *See Paschal v. Munsey*, 168 Ark. 58, 268 S.W. 849 (1925); *White River Lumber Co. v. Elliot*, 146 Ark. 551, 226 S.W. 164 (1920). The coercion in these cases was that of an immediate loss of property if the taxes were not paid.

Informed by these legal principles, we must now determine whether the taxpayers voluntarily paid their taxes prior to the filing of this illegal-exaction suit or whether the payments were made as a result of coercion. Appellee contends that she and the other taxpayers were coerced into paying the illegal taxes. Specifically, she argues that if she and the other taxpayers had refused to pay the unlawful taxes, DF&A could have used its statutory powers of enforcement and collection to compel the payments. Appellee argues that the potential use of such powers constituted coercion and rendered the payments involuntarily.

The trial court agreed with appellee's argument and in its order found:

> In the present case . . . DF&A can take action against the taxpayer directly. Under A.C.A. § 26-18-70, DF&A can issue a certificate of

indebtedness, and that certificate is recorded by the courts and a writ can be issued. No other entity has discretion in the process. The court finds that the authority of DF&A to enforce the payment of income taxes was sufficiently coercive to make the plaintiff's payment involuntary.

■ The trial court's findings and appellee's assertions are incorrect. We have reviewed the evidence to determine whether appellee or the other taxpayers were coerced by DF&A into paying the illegal taxes. As previously noted, to establish the type of coercion that would render a payment of taxes involuntary the taxpayer must demonstrate "some actual or threatened exercise of power possessed by the party exacting or receiving payment over the person or property from which the latter has no reasonable means of immediate relief except by making payment." *Chapman, supra.* We have previously noted that Ms. Chavers paid her taxes without protest from 1991 until 1994. *See Carson, supra.* We conclude that there is no evidence to establish that DF&A exercised or threatened to exercise power over appellee or any other taxpayer in an attempt to exact payment of the allegedly illegal taxes. In her brief, appellee explains the statutory powers of enforcement and collection available to DF&A. However, there is no citation to evidence in the record to establish that DF&A used or threatened to use such powers at anytime during this action. Moreover, there is no citation to evidence in the record to suggest that DF&A issued or threatened to issue certificates of indebtedness or liens upon property of any of the taxpayers in an attempt to secure the payment of their taxes.

■ Appellee relies on DF&A's admission that it would have recomputed wrongly filed tax returns and assessed deficiencies to the taxpayers filing such returns as proof that DF&A coerced the payments of the taxes. We find this argument unpersuasive. A recalculation of taxes and an assessment of tax deficiencies does not compel payment of taxes. These actions merely reflect DF&A's determination of the amount of taxes DF&A considers to be due and the taxpayer can then determine whether to pay or challenge the assessment. Accordingly, we conclude that the potential that DF&A could recalculate tax returns or could issue revised assessments is insufficient to establish coercion.

■ We further conclude that the taxpayers were not coerced because they had other reasonable means of relief available

to them which would have enabled them to avoid DF&A's alleged exercise of power other than paying the illegal taxes. First, we note that an illegal-exaction suit could have been filed in 1991 or at anytime thereafter. The statutory provision giving rise to the illegal-exaction claim was the same in 1991 as it was in 1994 at the time the suit was filed. From the time litigation was filed in 1994, the payment of those taxes was involuntary. We also note that within the statutory provisions outlining DF&A's powers of enforcement and collection, procedural due-process protection is provided to the taxpayers. These provisions offered a method whereby the taxpayers could have challenged DF&A's actions. Thus, we conclude that the taxpayers had other reasonable means with which to challenge DF&A's actions other than paying the tax.

■ Because we have not been cited to any evidence in the record of DF&A's actual or threatened exercise of power over the taxpayers in an attempt to collect or enforce payment of the contested taxes, and because the taxpayers had other reasonable means of relief from payment of the contested taxes, we conclude that the trial court erred when it found that the taxpayers were coerced into paying those taxes. Accordingly, we conclude that the taxpayers voluntarily paid the taxes that they are challenging in their illegal-exaction suit and therefore the voluntary-payment rule precludes recovery of those payments made before the filing of the litigation.

■ In his second point on appeal, appellant argues that the trial court erred when it concluded that Ark. Code Ann. § 26-51-301(d) was unconstitutional. We note that Act 1160 of 1995 repealed Ark. Code Ann. § 26-51-301(d). Because the challenged statutory provision has been repealed, we decline to address this argument. *See Morgan v. Sparks*, 258 Ark. 273, 523 S.W.2d 926 (1975) (holding that a constitutional challenge to a repealed statute raises a moot issue that we will not consider on appeal).

■ Appellant's third and fourth points on appeal involve the trial court's creation of a common fund and whether the trial court properly awarded appellee's attorneys' fees from such a fund. Because we have determined that the taxpayers voluntarily paid the contested taxes, and because the voluntary-payment rule precludes recovery of voluntarily paid taxes, we conclude that there were no proceeds to place in a common fund. Because there

were no funds to place in a common fund, the trial court erred in finding that a common fund existed and by awarding attorneys' fees from such a fund. Accordingly, we reverse the trial court on these issues.

█ In one point raised by appellee on cross-appeal, appellee argues that the trial court erred when it refused to order refunds not paid to taxpayers to be put in the unclaimed-property fund pursuant to Ark. Code Ann. § 18-28-201 *et seq.* (Supp. 2001).[3] Because we have determined that there are no refunds to be distributed, we need not consider this issue.

Reversed.

GLAZE, J., concurs.

IMBER, J., concurs writing separately.

HANNAH, J., dissents.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur in the majority's judgment that Appellee failed to meet her burden of proof that the taxpayers were coerced into paying the illegal taxes. I write to emphasize that immediacy has long been the touchstone of the coercion exception. For over a hundred years, this court has found coercion only where a taxpayer was forced to choose between paying the disputed tax and suffering an immediate loss of personal freedom or property. Two early cases involving disputed liquor taxes illustrate the point. In *Drew County v. Bennett*, 43 Ark. 364 (1884), we found an immediate threat where the county required the appellee to pay a disputed tax in order to get a dram-shop license necessary to the conduct of his business. In *Magnolia v. Sharman*, 46 Ark. 358 (1885), we affirmed reimbursement where the town constable was also the tax collector and threatened to arrest the plaintiff

---

[3] The relevant statutory language provides:

(a) Property is presumed abandoned if it is unclaimed by the apparent owner during the time set forth below for the particular property:

\* \* \*

(9) property received by a court as proceeds of a class action, and not distributed pursuant to the judgment, one (1) year after the distribution date.

Ark. Code Ann. § 18-28-202 (Supp. 2001).

taxpayer if he refused to pay the protested tax. There followed some cases where we declined to find that an illegal tax was paid under compulsion. The owner of a meat market sued to recover an illegal tax in *City of Helena v. Dwyer*, 65 Ark. 155, 45 S.W. 349 (1898). We found inadequate evidence of coercion and emphasized that, to be recoverable, a tax must be paid "to relieve the person from arrest" or "to prevent a seizure, when it is threatened." *Id.* We affirmed the denial of recovery in *Brunson v. Board of Directors of Crawford County Levee District*, 107 Ark. 24, 153 S.W. 828 (1913) where the appellant had sued to recover levee taxes paid under protest. We held that there was no duress or compulsion because the taxpayer was in "no immediate danger of being disturbed in the possession of his property" if he refused to pay the disputed tax. *Id.* More recently, we held taxpayers were not coerced in *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 299 (1983), cited in the majority opinion. In *Cash*, the appellees sued to recover taxes paid pursuant to a privilege tax levied on the city waterworks commission. *Id.* We held there was no immediacy, and therefore no coercion, because the City had no power to terminate services to citizens who refused to pay the disputed tax. Protesting taxpayers faced no immediate loss of property or liberty. *Id.* Thus, there was no coercion and the taxes were paid voluntarily. *Id.*

The record here contains no evidence that Appellee or any plaintiff paid the illegal tax under threat of an immediate loss of liberty or property. Thus, I concur with the majority decision that longstanding Arkansas law prevents the reimbursement of these taxes.

JIM HANNAH, Justice, dissenting. I respectfully dissent. I have two concerns. My first concern is the statement in the majority opinion that "taxes paid before the filing of an illegal-exaction complaint are considered to have been voluntarily paid." No authority is cited, and I believe that this statement is overbroad. The majority also states that "[t]he general rule is that taxes paid before litigation commences are voluntary, while payments made after litigation has commenced are involuntary." This statement is also overbroad.

In *Weiss v. McFadden*, 356 Ark. 123, 148 S.W.3d 248 (2004), this court also stated that "[i]t is well-settled that taxes paid prior to the filing of an illegal-exaction suit are deemed voluntarily paid." *McFadden*, 356 Ark. at 129. For this proposition, this court in

*McFadden* cited to *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000), and *Mertz v. Pappas*, 320 Ark. 368, 896 S.W.2d 593 (1995). The confusion appears to arise from the following language in *Mertz*:

> Appellants do not have a claim because the taxes were voluntarily paid before suit was filed. We have consistently followed the common law rule that prohibits the recovery of voluntarily paid taxes, except where a recovery is authorized by a statute without regard to whether the payment is voluntary or compulsory. *See, e.g., City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982); *Searcy County v. Stephenson*, 244 Ark. 54, 424 S.W.2d 369 (1968); *Thompson v. Continental Southern Lines, Inc.*, 222 Ark. 108, 257 S.W.2d 375 (1953). We follow this rule even when an illegal exaction claim is based on constitutional grounds. *Cash*, 277 Ark. at 504-05, 644 S.W.2d at 233. When recovery is authorized by statute upon payment "under protest," we literally require a payment "under protest." *Hercules, Inc. v. Pledger*, 319 Ark. 702, 894 S.W.2d 526 (1995). There is an exception for payment under coercion, *see Cash*, 277 Ark. at 505, 644 S.W.2d at 233; *Chapman & Dewey Land Co. v. Board of Directors*, 172 Ark. 414, 288 S.W. 910 (1926), but that exception is not applicable to the case at bar.

*Mertz*, 320 Ark. at 370. This same language was cited by the dissent in *Worth, supra*.

While it is true that voluntary payment of taxes before the filing of the complaint extinguishes a claim of illegal exaction, the mere fact that the taxes were paid before the complaint was filed does not extinguish an illegal exaction claim. To extinguish a claim for illegal exaction, the taxes must be voluntarily paid. *Worth, supra*. The reason that voluntarily paid taxes are non-recoverable is that without a protest or notice of a dispute by a taxpayer, the taxing authority has no knowledge that there is a dispute and may disburse the taxes for payment of some governmental purpose before becoming aware of the dispute. *Worth, supra*. This could jeopardize current and future governmental operations because current and future funds might be necessary for the refund. *Worth, supra; Mertz, supra*. Language from *Worth, supra*, is helpful in understanding this issue:

> In *Brunson v. Board of Directors of Crawford County Levee Dist.*, 107 Ark. 24, 27, 153 S.W. 828, 829 (1913), this court held that:
>
>> Where a party pays an illegal demand, with full knowledge of all the facts which render such demand illegal, without an

> immediate and urgent necessity therefor, or unless to release (not to avoid) his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back.

> The court went on to hold in *Brunson* that the payments were voluntary because there was no immediate danger that the appellant would lose his property or suffer irreparable harm for failing to pay his taxes. Conversely, in *Paschal v. Munsey*, 168 Ark. 58, 268 S.W. 849 (1925), this court held that taxes were not paid voluntarily where the tax collector had the authority to take and sell the appellants' land for failing to pay their taxes.

*Worth*, 341 Ark. at 28. The mere fact alone that the taxes were paid before filing of the suit does not mean that they were voluntarily paid and that recovery is prohibited.

I also disagree with the majority's opinion regarding coercion. The majority states:

> We have previously noted that Ms. Chavers paid her taxes without protest from 1991 until 1994. *See Carson, supra.* We conclude that there is no evidence to establish that DF&A exercised or threatened to exercise power over appellee or any other taxpayer in an attempt to exact payment of the allegedly illegal taxes . . . Moreover, there is no citation to evidence in the record to suggest that DF&A issued or threatened to issue certificates of indebtedness or liens upon property of any of the taxpayers in an attempt to secure the payment of their taxes.

I do not believe that the DF&A needed to go so far as to threaten to issue a certificate of indebtedness. A certificate of indebtedness would only be issued after the taxes were overdue. The taxes were paid under the threat of the type of power the DF&A enjoys. *Brunson v. Board of Directors of Crawford County Levee District*, 107 Ark. 24, 153 S.W. 828 (1913), provides:

> The facts alleged in the complaint in the instant case, however, do not in law constitute duress or compulsion. Appellant was in no immediate danger of being disturbed in the possession of his property, and he would not have jeopardized it by not paying his taxes at the time he did pay them. No irreparable injury could have

resulted from his not paying them at the time. If he had refused payment to the collector, the latter had no authority to levy upon and seize his land to enforce payment. The statute requires suit to be brought by the board of directors of the leveee district to collect the taxes. In the event of such suit the plaintiff would have his day in court, and the opportunity to plead and to offer proof in support of his claim that the taxes were illegal.

*Brunson*, 107 Ark. at 27-8. In the present case, DF&A may issue a certificate of indebtedness. Chavers's property would be subject to levy. The taxes were paid under compulsion and should be returned. · Therefore, I dissent.

We are losing sight of the reason for the voluntary payment rule. This court in *Town of Magnolia v. Sharman*, 46 Ark. 358 (1885), cited the following language from *Erskine v. Van Arsdale*, 82 U.S. 75 (1872):

> Taxes illegally assessed and paid may always be recovered back, if the collector understands from the payer that the taxes are regarded as illegal and that suit will be instituted to compel the refunding of them.

*Sharman*, 46 Ark. at 363 (citing *Erskine*, 82 U.S. at 77). If the taxes were paid under compulsion, they are recoverable. *Helena v. Dwyer*, 65 Ark. 155 (1898). The idea is simple. Where the taxing authority has notice that payment of the tax is disputed, the taxing authority can set aside funds or do whatever is necessary to protect itself against possible loss of the funds. An exception to notice is where the taxing authority may collect without resort to the courts as in the present case. The rule is fair. This case should be affirmed.