Robert Glen BISHOP *v.* Suzanne BISHOP

CA 05-996 250 S.W.3d 570

Court of Appeals of Arkansas
Opinion delivered February 28, 2007

*Stephen M. Sharum*, for appellant.

*Rex W. Chronister*, for appellee.

D .P. MARSHALL JR., Judge. This domestic relations case asks questions about modifying support obligations and the voluntariness of some car payments. Dr. Robert Bishop and Susan Bishop were divorced in September 2003. Among other things, in the decree the court ordered Dr. Bishop to pay $3000 a month in alimony and $1500 a month child support. The court also awarded Mrs. Bishop possession of a Mercury Grand Marquis and made her responsible for the indebtedness on this vehicle. When his income decreased, Dr. Bishop petitioned for a reduction in the alimony and child support he was paying for the Bishops' daughter. He also sought reimbursement for post-divorce payments that he had made to Ford Motor Credit for the Grand Marquis. The circuit court ultimately declined to modify Dr. Bishop's monthly obligations and concluded that he was not entitled to reimbursement for any of the car payments because he had made them voluntarily. Dr. Bishop appeals both rulings. We affirm the circuit court on the support issues. We affirm in part, reverse in part, and remand on the car payments.

The circuit court did not abuse its discretion in leaving Dr. Bishop's support obligations the same. *Schumacher v. Schumacher*, 66

Ark. App. 9, 15, 986 S.W.2d 883, 887 (1999). The court based its original order for child support and alimony on the income reflected in Dr. Bishop's 2002 W-2 tax form. When he sought the modification in 2004, Dr. Bishop's income had decreased by more than 20% from that amount. That change, however, entitled him to petition for a modification; it did not guarantee the modification. Ark. Code Ann. § 9-14-107(a) (Supp. 2005); *Heflin v. Bell*, 52 Ark. App. 201, 206, 916 S.W.2d 769, 772 (1996).

While Dr. Bishop correctly points out that the order denying modification does not recite the presumptively correct chart amount of child support, the court's letter opinions do. *Guest v. San Pedro*, 70 Ark. App. 389, 394, 19 S.W.3d 62, 65 (2000). The court's first letter stated that child support and alimony should be "adjusted" and used Dr. Bishop's 2004 tax return and the family support chart as a guide to set child support and alimony. Dr. Bishop then wrote the court and pointed out an error in the court's calculation. Mrs. Bishop also wrote to the court asking it to consider her various health problems, medical expenses, and the length of the marriage. The court responded with a second letter opinion setting the total obligation at $4322 a month — $2763 in alimony and $1559 for child support. Thereafter, Mrs. Bishop wrote another letter to the court again noting her expenses, Dr. Bishop's income, and the hardship she would experience if the total obligation decreased from $4500. The court entered its order about three weeks later. In that order, the court decided against any modification and left intact Dr. Bishop's total obligation at $4500 per month — $3000 for alimony and $1500 for child support. The court's letters indicate that the court recognized both the chart amount of support and Dr. Bishop's decreased income, and considered decreasing his obligation before ultimately denying the petition for modification.

 In its order, the circuit court noted that it considered many facts before deciding to leave the total support obligation unchanged. The court heard testimony about Mrs. Bishop's health-related expenses (for several illnesses including cancer, diabetes, parathyroidism, and dumping syndrome), their daughter's needs (including medical care and the cost of the private school that she had always attended), the length of the marriage (more than twenty-five years), and Dr. Bishop's current and potential future income (as an emergency-room physician). Our standard of review recognizes the trial court's range of legally acceptable choices: this was a judgment call. *Schumacher, supra.* The

circuit court carefully considered the needs of Mrs. Bishop and the Bishops' daughter and Dr. Bishop's decreased ability to pay. And the court's ultimate decision to maintain the same level of support was well within the circuit court's informed discretion.

We are left with the definite and firm conviction, however, that the circuit court erred in part on the car payments. *Hunt v. Hunt*, 341 Ark. 173, 177, 15 S.W.3d 334, 337 (2000). After the divorce, Mrs. Bishop did not make the payments on her Grand Marquis. Dr. Bishop made all of them. She did make some efforts to get the car refinanced. The circuit court found, and we agree, that the record is unclear about what efforts Dr. Bishop made to help his ex-wife accomplish the refinancing. In any event, Mrs. Bishop eventually gave up, and in December 2003 she abandoned the car in Dr. Bishop's front yard.

Her abandonment placed Dr. Bishop in a dilemma. Although the divorce decree awarded Mrs. Bishop the car and obligated her to assume the indebtedness, the car remained financed in Dr. Bishop's name alone. His obligation to the creditor remained intact. Therefore, to protect his credit, Dr. Bishop continued making payments to Ford Motor Credit. Several months after she abandoned the car, he moved the circuit court to hold Mrs. Bishop in contempt for failing to make the payments and abandoning the car. When the court heard the motion, approximately one year later, Dr. Bishop testified that he had made nineteen payments since the September 2003 divorce decree. He thus had made approximately seven payments before he sought relief from the circuit court in April 2004.

The voluntary-payment rule bars the recovery of payments for obligations that are not enforceable at law when the payments are made in the absence of fraud, mistake of fact, coercion, or duress. *Vandiver v. Banks*, 331 Ark. 386, 393, 962 S.W.2d 349, 353 (1998). Dr. Bishop did not make these payments voluntarily in the everyday sense of the word — he did not make them as a favor or gift to Mrs. Bishop or because he wanted to do so. He made the payments to protect his credit rating. Dr. Bishop offered no evidence that he was operating under a mistake of fact, that he was defrauded, or that the elements of extortion were present. But he vigorously argued his case as one for duress of personal property.

The parties argue on appeal from *Vandiver* and *Kibler v. Kibler*, 27 Ark. App. 77, 766 S.W.2d 938 (1989). Both cases are helpful but not dispositive. Unlike this case, *Vandiver* did not

involve payments on an enforceable legal obligation to a third party. *Kibler* allowed a recovery to a person in Dr. Bishop's place. That decision, however, turned on the equities rather than alleged duress to personal property. We conclude that an old precedent is more instructive in the circumstances here.

In *Vick v. Shinn*, our supreme court held that duress exists when there is some "actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another from which the latter has *no other means of immediate relief* than by making the payment." 49 Ark. 70, 70, 4 S.W. 60, 61 (1887) (emphasis in original). Dr. Bishop's initial payments were voluntary in the legal, if not the everyday, sense of the word. Dr. Bishop had a means of immediate relief from the threat to his credit other than simply making the car payments. "One cannot be heard to say that he had the law with him, but feared to meet his adversary in court. It is only when he has no chance to be heard that he can pay under protest and afterwards recover." 49 Ark. at 70, 4 S.W. at 62.

As to Ford Motor Credit, Dr. Bishop remained legally obligated to pay. The divorce decree, however, made Mrs. Bishop responsible for the debt on the car, and Dr. Bishop had no legal obligation to her to make the monthly payments. Dr. Bishop could have sought prompt relief from the circuit court when she did not start making the payments and when she abandoned the car. Instead, Dr. Bishop waited about seven months after the divorce, and four months after the abandonment, before filing his motion for contempt. Having chosen to keep paying Ford Motor Credit instead of pressing his rights against Mrs. Bishop immediately, Dr. Bishop cannot succeed in arguing that his pre-contempt-motion payments were forced on him. The voluntary-payment rule puts the risk of loss on the one who pays because that person — here, Dr. Bishop — is best able to avoid the loss by not paying, or by paying under protest, and seeking a prompt legal remedy in either event. The circuit court correctly concluded that Dr. Bishop's payments made before his motion for contempt were voluntary.

We hold, however, that the circuit court clearly erred in denying Dr. Bishop reimbursement for the car payments he made after he filed his motion for contempt. *See, e.g., Weiss v. Chavers*, 357 Ark. 607, 614, 184 S.W.3d 437, 441 (2004) (applying the voluntary-payment rule and its exceptions, and holding that taxes paid after the filing of the illegal-exaction complaint were

involuntarily paid while taxes paid before the filing were voluntary). When he filed his motion, Dr. Bishop asserted his rights against Mrs. Bishop and sought judicial relief. His later payments are more correctly viewed as payments under protest rather than voluntary payments. After he moved to hold Mrs. Bishop in contempt, Dr. Bishop had no way to protect his credit other than to make the payments on the car and await the circuit court's decision on his motion.

The circuit court ordered Dr. Bishop to sell the car under certain conditions and allocated any deficiency to Mrs. Bishop. She has not challenged this part of the court's decision. We affirm the circuit court's decision denying Dr. Bishop any recovery for all his pre-contempt-motion car payments. We reverse that part of the court's order denying him reimbursement for his post-motion payments. We also remand for the circuit court to calculate the proper amount of reimbursement due Dr. Bishop for all his post-motion car payments.

Affirmed in part, reversed in part, and remanded.

HART and HEFFLEY, JJ., agree.